In the Matter of the Estate of CHRISTIAN STREEBEL, Deceased.

Surrogate's Court, Albany County, April 23, 1934.

*Edward C. Conway*, for the petitioner.

*Hinman, Straub & Hughes*, for the objector.

ROGAN, S. The will which is the subject-matter of the present construction proceeding was executed on June 18, 1887. Its items, so far as presently pertinent, provide:

"*First*, after all my lawful debts are paid and discharged, I give and bequeath to my beloved wife Electa all my estate both real

and personal of every kind and nature for the support and maintenance of herself and my two children and for and during the term of her natural life or so long as she remains unmarried.

" Second. After the death or remarriage of my said wife I give, devise and bequeath the remainder of my said estate to my two sons Casper and John share and share alike.

" Third. I hereby Will and Direct that my said two sons, Casper and John shall live with my said wife until they arrive at the age of twenty-one years and that they shall be subject to her, and treat her as though she was their mother and hoping that they may live to repay her for her uniform Kindness and motherly care I hereby authorize my Executrix hereinafter named to Sell and convey any Real Estate owned by me if necessary."

The decedent died on the 2d day of October, 1887. He left him surviving his widow, Electa Streebel, and two sons, Casper and John. Electa Streebel was decedent's second wife and was not the mother of Casper and John. Casper Streebel died intestate and unmarried in 1894, and his brother John succeeded to all his interest in the estate. It has been stipulated by the parties herein that the only property owned by the decedent at the time of his death was a two-story frame dwelling at No. 13 Sherman street, Albany, N. Y., assessed for $1,600, and which was occupied by a tenant on the second floor who paid the sum of ten dollars a month. This property was sold by the executrix, Electa Streebel, on or about the 27th day of April, 1923. The question has arisen as to whether or not the widow had the right to invade the corpus of the estate for her support, and for the support and maintenance of her stepsons under the terms of the will.

It is, of course, primary that testator's intention is to be gathered from a reading of the will in its entirety. (*Matter of Loomis*, 149 Misc. 417; *Matter of Burling*, 148 id. 835; *Matter of Cronin*, 147 id. 611; *Matter of Grauer*, 146 id. 469.) It is also elementary that one clause or part may frequently clarify the meaning and phraseology used in another. (*Livingston* v. *Ward*, 247 N. Y. 97; *Matter of McGowan*, 134 Misc. 409; affd., 254 N. Y. 513; *Matter of McCafferty*, 142 Misc. 371; affd., 236 App. Div. 678; *Matter of Storey*, 134 Misc. 791.) It has been frequently stated that no will has a " twin brother," and the citation of quotations from the language of decisions interpreting the individual language of other wills is wholly valueless in the interpretation of the diverse phraseology of other wills. (*Matter of Watson*, 262 N. Y. 284; *Matter of Rossiter*, 134 Misc. 837; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113; affd., 232 App. Div. 698; *Matter of McCafferty, supra.*)

The will as a whole shows unmistakable evidence of lack of

preparation by an inexperienced draftsman. It is evident, however, from reading the whole will that the decedent had in his mind at the time the will was prepared ample reason to adequately provide for his wife. She was his first thought. He knew that he had only one parcel of property of relatively little value. He was conscious of his wife's love and devotion, not only to him but to his small children as well. He was aware that as long as his wife remained alive she would look after them. He confided them to her care during their minority. He even went so far as to hope they might " live to repay her for her uniform Kindness and motherly care." This is not a case where the estate was left to the wife without qualification as to use. It was for a definite purpose, the support of herself and children being the only and paramount purpose. How was she to support herself and these two children if she was to be limited to only the income from the corpus of this estate? We do not have to speculate as to what his intentions were regarding the necessity of invading the principal should the income be insufficient for the needs of herself and his children. He comprehended that she might need it all, and so apply it to the permitted purpose as to leave none of it behind her at her death. Unless the testator intended to devise to his wife such an estate and power why did he authorize and empower her to " Sell and convey any Real Estate owned by me if necessary." What could he have meant by " if necessary? " To my mind his intention is entirely clear. It is quite impossible to believe that he meant anything but the support and maintenance of his widow and his children. He knew the value of the property as he bought it; he knew what its income was; he knew that neither his widow nor his children could live on the income, or on the income of the proceeds of the sale. These words indicate his intent that his widow might use and dispose of the body of the estate devised in the event that it was necessary for support and maintenance, as well as the income thereof.

In giving adequate force to every word used by the testator, I hold that the widow, Electa Streebel, took a life estate with power to invade the principal of the estate for her support and maintenance.

Enter decree accordingly.