In the Matter of the Estate of JOHN DAVENPORT CLARKE, Deceased.

Surrogate's Court, Delaware County, April 1, 1936.

*Fertig, Walter & Gottesman,* for the executors, the Delaware National Bank and Eleanor Clarke Slagle.

*Harold E. Hyzer,* for Franklin Free Public School.

*Hamilton J. Hewitt,* for Delaware Academy.

O'CONNOR, S. Deceased died in November, 1933. He left surviving his widow, Marian Clarke, and son, John Duncan Clarke. In the second paragraph of his will dated July 10, 1931, he bequeathed to various churches, educational institutions and individuals legacies amounting to $3,200. The third paragraph of his will provides as follows:

" I give, devise and bequeath all my real estate, situate at Frazer, Delaware County, New York, together with the furniture and furnishings, the library and the other personal effects contained in my residence known as ' Arbor Hill ' to my executors and trustees hereinafter named, in trust, nevertheless, to be maintained so long as they deem it advisable, in their discretion, out of the income from my residuary estate as a home for my wife Marian, and my son, John, or the survivor of them during their lives. Upon their deaths, said real estate, the furniture and furnishings, the library and the other personal effects are to become part of my residuary estate and to be disposed of in accordance with the paragraph marked ' Fourth ' of this my last will and testament.

" In the event my said trustees do not deem it wise, in their absolute discretion, to maintain said home during the lives of either or both of my said wife and son, then the said real estate, furniture and furnishings and library and the other personal effects shall be sold at public or private sale, and upon such terms and conditions as my said trustees shall determine to be for the best interests of my estate, and the net proceeds therefrom, shall become a part of my residuary estate and be disposed of as hereinafter provided for."

In the fifth paragraph he states that the provisions made in the will for his widow are in lieu of her dower right.

On this accounting it appears that, after the payment of debts, funeral and administration expenses, the executors will have on hand in cash and personal property the sum of about $2,700. The residence of the deceased, known as " Arbor Hill," has not been disposed of and is now being occupied by deceased's widow, Marian, and son, John. Up to the present time it has been maintained by the executors. Thus it appears that there are not sufficient funds to pay the general legacies in full and, if they are paid, there is no residuary estate to furnish an income with which to maintain " Arbor Hill " for the widow and son. The executors are asking that the surrogate on this accounting construe the will and determine that the general legacies contained in the second paragraph should abate and the $2,700, or the income therefrom, be used to maintain the residence of deceased for his widow and son.

The Franklin Free Public School and Delaware Academy, legatees in the second paragraph of the will, have appeared by their respective attorneys and insist that the general legacies do not abate and that the funds now in the hands of the executors should be used to pay the general legacies *pro rata.*

It is evident that the testator was either mistaken as to the amount of his estate at the time he made his will, or else it has greatly decreased in value between that time and his death. He

was an attorney and counselor at law, admitted to practice in this State, and had been a member of Congress from the thirty-fourth congressional district for a number of years. It is hardly conceivable that he would knowingly make bequests far in excess of the assets of his estate. However, it appears from this accounting that there are not sufficient assets to carry out in full the provisions of his will.

In this State it has been held uniformly that legacies for the support and maintenance of a husband or wife, otherwise unprovided for, even though they be general legacies, do not abate with the other general legacies. (*Scofield* v. *Adams*, 12 Hun, 366; *Matter of Hinman*, 32 Misc. 536, 537.) The law is well settled that where a legacy is given in consideration of the relinquishment by the legatee of some subsisting right or interest, as to a wife in lieu of dower, such legacy is entitled to priority over general legacies which are mere bounties, for in such cases the legatee stands in the situation of a purchaser and not a mere volunteer. Such is the rule though the value of the legacy greatly exceeds the value of the right relinquished. (*Matter of McKay*, 5 Misc. 123, at p. 126, and cases there cited.) A legacy to a son for his maintenance or education is also preferred to general legacies and does not abate in case there are insufficient funds to pay the legacies contained in the will in full. (*Petrie* v. *Petrie*, 7 Lans. 90; *Matter of Chauncey*, 119 N. Y. 77, at p. 84; *Matter of Lloyd*, 166 App. Div. 1; *Scofield* v. *Adams*, *supra*, at p. 370.) Here the provision for the widow is made in lieu of dower, and neither the widow nor the son are otherwise provided for except that he gives the income of one-third of his residuary estate to each. Until the executors sell Arbor Hill, there will be no residuary. In effect the widow and son are otherwise unprovided for.

In the construction of any will it is the duty of the court to ascertain from the will and from such extraneous circumstances as may be brought to its attention the true intent of the testator. The application of this rule is sometimes quite difficult where the assets of the estate are sufficient to carry out fully the provisions of the will whatever construction may be placed upon it by the court. It becomes more difficult where the assets are insufficient in any event to carry out fully the intent of the testator. This because the court has to determine what the intent of the testator was, or rather would be, at the time of the making of the will had he known there would not be sufficient funds in his estate at his death to carry out fully the provisions thereof.

It is also to be noted that the situation here is somewhat different than that which usually arises in cases of this kind, in that the income for the maintenance of the home for his widow and son is to be derived from his residuary estate and not from the general funds of the estate. However, we are of the opinion that the rule that a provision for the maintenance of members of the testator's immediate family should prevail as against the general legacies, even though the income to provide such maintenance is to be derived from the residuary estate which would not come into existence if the general legacies were paid. This would undoubtedly have been the intent of the testator had he known that his estate at the time of his death would be insufficient to pay the general legacies and provide a residuary estate which would produce sufficient income to maintain his residence as a home for his widow and son. This because of the rule established by the authorities above cited which has for its foundation the presumption that every testator, unless there is a clear indication to the contrary, desires to provide for those persons who are the natural objects of his bounty, especially his widow and son.

It is apparent, however, that the income from the cash and personal property remaining in the hands of the executors after the payment of debts, funeral and administration expenses, will not be sufficient to pay fully the expense of maintaining his residence as a home for his widow and son. Twenty-seven hundred dollars cannot now be safely invested to yield an income sufficient for that purpose. Had testator known at the time he made his will that his estate would be so small, it is probable that he would have directed that all the moneys remaining after the payment of his debts, funeral and administration expenses be used to maintain the home for his widow and son. Even so, and although the circumstances indicate that it should be done, in our opinion, the court has no authority to direct that the principal of this fund be used for that purpose. The testator in his will specifically directs that the fund which is to be used by his executors for the maintenance of the home for his widow and son is the income from his residuary estate. None of the attorneys for the respective parties have referred the court to any cases on this subject. After diligent search no cases have been found which hold that where there is no specific direction or the language employed by the testator does not clearly indicate that such was his intent, the principal can be invaded, even though the equities and circumstances of the case would justify such an invasion. (*Matter of McDougall*, 141 N. Y. 21; *Cass* v. *Cass*, 15 App. Div. 235; *Delaney* v. *Van Aulen*, 84 N. Y. 16; *Matter of Dirskel*, 100 App. Div. 171.) In every instance where an invasion of the principal has been permitted, the testator has

expressed his intention by a specific direction to that effect (*Matter of Briggs*, 223 N. Y. 677; *Matter of Ithaca Trust Co.*, 176 App. Div. 40; *Matter of Barnett*, 182 id. 926; *Matter of Smith*, 129 Misc. 497), or the language employed by him has been such as to clearly indicate that that was his intent. (*Matter of McDougall, supra; Matter of Streebel*, 151 Misc. 219; *Matter of Newton*, 140 id. 440.)

While we are of the opinion that the general legacies contained in the second paragraph of the testator's will should not be paid at this time and that the income from such moneys which are now in the hands of the executors should be used for the purpose of maintaining the home for the widow and son, we do not feel warranted in holding that the general legacies should abate entirely. To do this would be to create a residuary estate out of the moneys directed to be paid to the general legatees. This cannot be done, even though the circumstances and equities would warrant such a construction, where the direction to pay the general legacies is so clear and explicit as in this case. The residuary legatees are entitled to nothing until all the debts and other legacies are paid. (*Buffalo Trust Co.* v. *Leonard*, 154 N. Y. 141, at p. 146; *Gilbert* v. *Taylor*, 76 Hun, 92; modfd., 148 N. Y. 298.) A case nearly in point is *Matter of Title G. & T. Co.* (195 N. Y. 339). In that case it is held: " A testator left a fund in trust, the income to be paid to his wife, and provided that on her death such fund be paid into and form part of his residuary estate. He also provided that the several general legacies he had made, excepting therefrom the one to his wife and another, should, in case of a deficiency in his estate, be reduced *pro rata*. The estate was insufficient to pay such legacies in full and they were so reduced. Held, that considering the whole will it was the intention of the testator to treat the trust fund set apart for the benefit of the wife, in the event of her death, as a part of the residue of his estate, only after the payment of general legacies in full, and that such trust fund must first be applied to the payment of the amount remaining due to the general legatees." (Headnote.)

Therefore, the general legacies should not abate entirely but the payment thereof should be deferred until the death of the widow and the son, or until such time as the executors may deem it advisable, in their discretion, to sell the residence of deceased. Until then the principal of the estate remaining after the payment of debts, funeral and administration expenses, should be invested by the executors, and the income therefrom applied toward the maintenance of the residence of the deceased as a home for his widow and son. At their death, or upon the executors selling " Arbor Hill," the principal sum of $2,700, with accrued income, if any, should be applied *pro rata* in payment of general legacies.

A decree may be submitted and settled on five days' notice.