Wendy Katherine Johnson, a Minor, by Katherine Healy Adamson, Also Known as Mary Katherine Adamson, Her Mother and Next Friend, Katherine Healy Adamson, Individually and as Guardian of the Estate of Wendy Katherine Johnson, a Minor, and as Trustee for All Persons Not in Being, Who Upon Coming into Being, May Be Entitled to or May Claim To Be Entitled to, Some Interest in Property Involved in This Suit as the Descendants of Ray Prescott Johnson, III, and of Wendy Katherine Johnson, Ray Prescott Johnson, III, Also Known as Prescott Johnson, Charles Alexander Patrick Johnson, a Minor, by Ray Prescott Johnson, III, His Father and Next Friend, and Patrick Adamson, Plaintiffs-Appellants, v. Continental Illinois National Bank and Trust Company of Chicago, a National Banking Association, as Executor of the Last Will and Testament of Ray Prescott Johnson, Deceased; Continental Illinois National Bank and Trust Company of Chicago, a National Banking Association, and Charles Strout Davis, Jr., as Trustees of the Trusts Created by the Last Will and Testament of Ray Prescott Johnson, Deceased; Alice Boyd Johnson, Individually and as Trustee for All Persons Not in Being, Who Upon Coming into Being, May Be Entitled To or May Claim To Be Entitled to, Some Interest in Property Involved in This Suit as the Descendants or Heirs at Law of Boyd Davis Johnson, Boyd Davis Johnson, a Minor, and the Northern Trust Company and Alice Boyd Johnson, as Guardians of the Estate of Boyd Davis Johnson, a Minor, Defendants-Appellees.

Gen. No. 51,872.

First District, Second Division.

September 22, 1967.

Edward Atlas and William B. Crawford, of Chicago, for appellants.

Samuel A. Rinella, J. Laurence Barasa, Addis E. Hull, Spencer H. Raymond, and Hugh M. King, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

The complaint as amended sought construction of certain provisions of a property settlement agreement entered into on June 29, 1953, between decedent and his then wife, Katherine Healy Johnson, presently Katherine Healy Adamson. No testimony was heard, the relevant facts being presented by a stipulation between the parties.

Decedent and Mrs. Adamson were married on April 1, 1935. Two children were born of the marriage, Ray Prescott Johnson III, in November of 1937 (hereinafter referred to as Prescott) and Wendy Katherine Johnson in June of 1949 (hereinafter referred to as Wendy). In June of 1953 the property settlement agreement was executed and a short while thereafter Mrs. Adamson filed her complaint for divorce. The following August a decree of divorce was entered and the property settlement

agreement was incorporated as part of the decree. The agreement provided, inter alia, that Mrs. Adamson should have custody of Prescott and Wendy, aged 15 and 4, respectively, at the time of the agreement; that the decedent purchase a home in Michigan for use as the residence of Prescott and Wendy; that decedent contribute $600 monthly toward the maintenance of the home; that decedent provide by will that no less than 50% of his net estate should be placed in trust for the benefit of Prescott and Wendy, subject to certain express conditions; and that any inter vivos gifts made by decedent to Prescott and Wendy after the date of the agreement could be deducted from the 50% share referred to above.

In April of 1956 decedent was married to Alice Boyd Johnson and a son, Boyd, was born of that marriage in 1957. Mrs. Adamson was married to Patrick Adamson in June of 1956. Since the divorce decree in 1953, Wendy has resided with Mrs. Adamson in the Michigan home, but Prescott has married and no longer resides there.

Decedent died in March of 1964 leaving a will dated July 8, 1958, and a codicil dated February 21, 1963, both of which were admitted to probate by the Circuit Court of Cook County, Probate Division, and letters testamentary were issued in May of 1964.

In November of 1964, plaintiffs filed the complaint herein to construe several provisions of the property settlement agreement, namely, whether Paragraph V of the agreement which provided for the creation of the trust for Prescott and Wendy by decedent's will requires the 50% share of the estate to be determined after claims, expenses of probate, attorneys' and executors' fees, and the like; whether the agreement permits decedent to provide by will that certain inter vivos gifts made by him to Prescott and Wendy after execution of the agreement to be deducted from the 50% share; and whether decedent's estate is obligated to continue to pay

the monthly home maintenance which decedent was obligated to pay under the agreement. The chancellor found, and the decree recited, that Prescott and Wendy's share should be calculated after deduction of claims, expenses of probate, attorneys' and executors' fees, etc.; that the inter vivos gifts made by decedent to Prescott and Wendy after the execution of the agreement were to be deducted from their 50% share of the estate; and that decedent's estate was not obligated to continue the $600 home maintenance contributions, from which determinations plaintiffs appeal.

The first argument raised by plaintiffs is that the chancellor erred in determining that Prescott and Wendy's share of decedent's estate should be calculated after deduction of claims, expenses of probate, fees, and the like. Plaintiffs maintain that the wording of the settlement agreement requires that the 50% share should be determined only after decedent's debts alone are deducted from the gross estate.

That part of Paragraph V of the property settlement agreement which provides for the creation of the trust for the benefit of Prescott and Wendy sets out:

> "Ray Johnson agrees that he will provide by his will that no less than 50% in actual value of his net extate (sic) as composed at the time of his death shall be placed in trust for the benefit of his children, Prescott Johnson and Wendy Johnson . . . ; that in the event that only one of said children shall survive [him], that no less than 25% of his net estate as composed at the time of his death will be placed in trust for the benefit of such child, provided he or she survives him."

Plaintiffs contend the words "50% in actual value of his net extate (sic) as composed at the time of his death" and the similar wording near the end of the above quota-

tion, clearly indicate decedent's intention to benefit his two children by providing that the 50% share be calculated after debts alone are deducted from decedent's gross estate. Plaintiffs attempt to buttress their position in this regard by comparing the above quoted wording in Paragraph V of the agreement to that employed in Paragraph IV, which paragraph relates to the alimony payments to be made to Mrs. Adamson. Paragraph IV provides in part:

". . . or if said sum of Two Hundred Forth (sic) Thousand Dollars ($240,000.00) exceeds one-third of the value of Ray Johnson's net estate after payment of all claims, expenses of probate and all estate or inheritance taxes, state and federal. . . .

". . . provided, however, that in no event shall more than one-third of the net estate of Ray Johnson after payment of all claims, expenses of probate and inheritance and estate taxes, state and federal, be used for payments to Katherine Johnson [Mrs. Adamson] hereunder."

■■ Plaintiffs state that the words "actual value of his net extate (sic) as composed at the time of his death" are not synonymous with the words "net estate after payment of all claims, expenses of probate and all estate or inheritance taxes, state and federal," and argue that the absence from Paragraph V of the wording used in Paragraph IV relative to the definition of "net estate" is evidence of an intention of the parties to the settlement agreement that the 50% share be calculated as of the time of decedent's death after debts alone are deducted from the gross estate. We agree with plaintiffs' position that a court, in construing a document, will not add thereto matters about which the document is silent, nor will it reject matters contained therein as mere surplusage, (DeTienne v. S. N. Nielsen Co., 45 Ill App2d 231, 234,

195 NE2d 240; Weger v. Robinson Nash Motor Co., 340 Ill 81, 92, 172 NE 7). The primary object of judicial construction is to establish the intention of the parties at the time the document was executed from a consideration of the entire document. Gay v. S. N. Nielsen Co., 18 Ill App2d 368, 374, 152 NE2d 468.

A consideration of the entire property settlement agreement reveals that the parties contemplated remarriage and the possibility of a second family on decedent's part. Paragraph IV specifically limits the alimony to be received by Mrs. Adamson to no more than one-third of decedent's estate after all claims, expenses of probate, taxes, etc., were deducted therefrom, no more than she would have been entitled under the statutes of descent and distribution. In Paragraph V, Prescott and Wendy were given the benefit of 50% of decedent's estate, with the possibility of their receiving less than 50% at the option of decedent. The agreement permits decedent to provide by will that the alimony payments due Mrs. Adamson could be paid one-half out of the Prescott share and the other half out of the Wendy share of the 50% trust. Thus, decedent had the power to provide less than 50% of his net estate to Prescott and Wendy and to limit the portion of his net estate which his first family, Mrs. Adamson, Prescott and Wendy, would receive to 50%. Furthermore, Paragraph V permits decedent to provide that certain inter vivos gifts made by him to Prescott and Wendy after the date of the agreement be deducted from the share to be held in trust for them, indicating that decedent could, by his own choosing, limit the amount to be received by his first family after the divorce to a maximum of 50% of his net estate. It should also be noted that the deduction of gifts relates only to those gifts given after the agreement was executed, again indicating decedent desired equal treatment be given to his two families should he desire to remarry.

■ It is clear that a second marriage and the possibility of a second family on decedent's part was contemplated by the parties to the agreement. Plaintiffs' construction of the wording in Paragraph V, that the 50% share to be held in trust for Prescott and Wendy must be determined after debts alone are deducted from decedent's gross estate, cannot be sustained for the reason that decedent's first family would receive a far greater share of the estate than would his second family, an effect plainly not contemplated by the agreement.

■ Plaintiffs also maintain that it is only natural that decedent and Mrs. Adamson should desire the greatest benefit to be extended to Prescott and Wendy by providing that their share be determined after debts alone are deducted from the gross estate and that the law favors a disposition by a parent in favor of his children. While it is true that this statement of law is well settled, (see In re Clarke's Estate, 158 Misc 830, 286 NYS 968, 971,) the argument overlooks the clear intention in the agreement to allow decedent, if he remarried, to provide 50% of his estate for his second family. Furthermore, plaintiffs throughout their brief treat the 50% share agreed upon to be held in trust for Wendy and Prescott as the creation of an incontestable right on their part to receive 50% of decedent's net estate. This is not true in the light of the fact that the agreement provides that decedent had the power to require Mrs. Adamson's alimony payments to be made from the 50% share and also that the inter vivos gifts to Prescott and Wendy could be deducted from the share.

The second contention raised by plaintiffs is that the chancellor erred in decreeing that the inter vivos gifts made by decedent to Prescott and Wendy after the date of the agreement must be deducted from the value of the share held in trust for them. Plaintiffs maintain first that because the agreement does not employ the words

"by his will" when stating the gifts could be deducted, decedent had no power to provide by will that the gifts be deducted; they claim decedent was required to declare his intention that the gifts be deducted at the time they were made, which he failed to do.

The pertinent portions of Paragraph V of the agreement in this regard read as follows:

> "Ray Johnson agrees that he will provide by his will that no less than 50% in actual value of his net extate (sic) as composed at the time of his death shall be placed in trust for the benefit of his children. . . .
>
> "In computing the percentage of the net estate of Ray Johnson which shall be left in trust for the benefit of said child or children, there may be deducted any gifts which Ray Johnson shall hereafter give during his lifetime to his said children."

██ It is clear from these provisions that the language concerning the deduction of the gifts relates back to the creation of the trust and the method of determination of its value. Since the trust was to be created by decedent's will, so also was decedent to provide by his will that the gifts were to be deducted from the share. As was stated above, this provision was another method at decedent's disposal to treat his first and second families equally, should he have a second family; it is therefore unlikely that, as plaintiffs maintain, the agreement required decedent to declare his intention that the gifts be deducted at the time they were made for the reason that some of the gifts may have been made before decedent had remarried or had contemplated remarriage.

██ Plaintiffs maintain in the alternative that, even if the chancellor correctly decreed that the gifts be deducted from the Prescott and Wendy trust share, he employed an improper method of computing the deductions. Plaintiffs

state the proper method of computing the deductions is by adding the value of the gifts to the value of the probate estate, taking the 50% share therefrom and finally deducting the value of the gifts. There is nothing in the agreement or the will which would indicate that the above method was intended or that anything other than a straightforward method of computing the deductions was intended, namely, that of simply computing 50% of the probate estate and then deducting the value of the gifts as the chancellor did.

██ Plaintiffs' final contention is that the chancellor erred in decreeing that decedent's estate was not obligated to continue to make the $600 home maintenance contributions which the agreement required decedent to make during his lifetime. They maintain that since Wendy still resides in the Michigan home the estate must continue to contribute to its maintenance. However, the conditions under which decedent was to contribute to the home maintenance were (1) one or both children were still residing in the home and (2) decedent would still be supporting such child or children. The obligation of decedent to support the children terminated with his death, Cooper v. Estate of Cooper, 350 Ill App 37, 42, 111 NE2d 564, and the obligations of support passed to the trust. The settlement agreement nowhere provides that decedent's estate should continue to contribute to the maintenance of the home.

For these reasons the decree is affirmed.

Affirmed.

LYONS, P. J. and BRYANT, J., concur.