THERESE M. HALAS *et al.*, Petitioners-Appellants, *v.* EXECUTOR OF THE ESTATE OF GEORGE S. HALAS, JR., Deceased, Respondent-Appellee.

First District (1st Division)   No. 82—235

Opinion filed February 14, 1983.—Rehearing denied March 14, 1983.

William J. Harte and David J. Walker, both of William J. Harte, Ltd., and Thomas S. Chuhak, guardian *ad litem, pro se,* both of Chicago, for appellants.

Cornelius J. Harrington, Jr., William L. Rowder, John T. Hickey, Jr., and Alan C. Brown, all of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Petitioner, Therese M. Halas, appeals from the dismissal of three petitions whereby she sought to have certain trust amendments declared invalid, to increase the amount of child support awarded in dissolution of marriage proceedings, and to set aside and vacate certain provisions of a judgment for dissolution of marriage. Thomas Chuhak, guardian *ad litem* appointed to represent the interests of two minor children, was granted leave to intervene. He joined Therese in the first two petitions, but opposed the latter.

On appeal, petitioner and the guardian *ad litem* contend (1) the trial court erred in finding that a partial revocation and an amendment of a trust were valid, and (2) petitioner should have been granted an increase in child support. Additionally, petitioner contends the trial court erred in dismissing with prejudice her section 72 petition to vacate portions of a judgment for dissolution of marriage.

We affirm in part, reverse in part, and remand.

Therese and George M. Halas, Jr., were married in 1963. Two children were born during the marriage. In 1975, Therese and George were divorced. George Halas, Jr., died on December 16, 1979. At the time of his death, he was married to Patricia Navalio Halas, whom he had wed in 1978.

The judgment for dissolution of marriage incorporated a settlement agreement entered into by the parties, each of whom was represented by counsel during the settlement negotiations. Part of the settlement agreement provided that decedent was to pay petitioner $50,000 as alimony in gross during the first year after the divorce

and $35,000 per year for up to nine years thereafter. The alimony in gross payments also included child support. The parties also agreed that alimony in gross payments would continue after decedent's death. Paragraph 5 of the settlement agreement insured continued payments and provided as follows:

"The husband further covenants and agrees that he will keep and maintain in full force and effect insurance upon his life by doing any and all things necessary thereto in any amount no less than the unpaid balance of the alimony in gross due and owing the wife at any time, naming the wife or a trust for the benefit of wife as irrevocable beneficiary thereof until the husband's said obligation to pay alimony in gross to wife has ceased."

In order to comply with paragraph 5 of the settlement agreement, decedent in 1976 executed an amendment (the 1976 amendment) to an insurance trust originally established in 1972. The 1976 amendment directed the trustee, upon decedent's death, to pay the alimony in gross out of the insurance proceeds as the payments became due. Any trust property remaining thereafter was to be paid to the trustee of the testamentary trusts for the benefit of the children. The 1976 amendment also contained the following provision which is one subject of this appeal:

"12. I reserve the following rights, powers and authority which may be exercised at any time and from time to time:

(a) By written instrument delivered to the trustee to change, modify, or revoke this agreement and the trusts hereby evidenced, in whole or in part, except that if changed or modified, the duties, powers and responsibilities of the trustee shall not be changed substantially without the trustee's written consent and *I may not change, modify or revoke this agreement in any way without the written consent of my former wife, Therese Martin Halas, as long as any of the gross alimony payments to be made to her under the agreement with her attached hereto as Exhibit B remain unpaid.*

(b) All benefits, privileges, payments, annuities, dividends, surrender values, options and elections accorded or available to me under any and all policies of life insurance which may be made payable to the trustee, including the right to change the beneficiary named in any or all of such policies, to deposit, assign, transfer or pledge them as collateral security for any loan which I may make from lender (including said American National Bank and Trust Company of Chicago) and to withdraw

any of such policies deposited with the trustee, except that in compliance with paragraph 5 of Exhibit B at all times life insurance policies which are in force under which I am the insured shall be retained in the custody of the trustee and be payable in a lump sum to the trustee in an amount exceeding loans against such policies no less than the unpaid balance of the alimony in gross due and owing to my former wife, Therese Martin Halas, at any time under the provisions of the agreement with her attached as Exhibit B. The trustee shall not be obligated to see that any policy so withdrawn is returned to the trustee's custody." (Emphasis added.)

In 1978, decedent again amended the trust (the 1978 amendment). In this amendment, decedent directed the trustee to retain only insurance proceeds in an amount equal to the unpaid alimony in gross. Funds in excess of that amount were to be distributed to a new trust established by decedent in 1978 (the 1978 trust). Under the terms of the 1978 trust, Patricia Halas was to receive one-third of the proceeds after decedent's death. The remainder was to be divided equally between two trusts established for the children. In order to fund the new 1978 trust, decedent executed a partial revocation of the 1972 trust, as amended in 1976, directing the trustee to surrender one of nine insurance policies used to fund the trust.

After decedent's death, petitioner sought to have the 1978 amendment and partial revocation declared invalid and to prohibit reliance by the executor and trustee on the amendment and revocation. She alleged in her petition that the amendment and revocation were void because they were executed without her consent. The guardian *ad litem* appointed to represent the interests of the minor children joined in this petition. After a hearing the trial court dismissed the petition.

In another petition filed after decedent's death, petitioner sought increased child support. She alleged that inflation operated to reduce the original support payments by 40% and that the support costs had increased since the time the original support order had been entered. The guardian *ad litem* joined in this request. After an evidentiary hearing, the trial court denied the petition on the ground that decedent had provided adequately for the needs of the children after his death.

Petitioner also filed a section 72 petition seeking to vacate certain portions of the judgment for dissolution of marriage. She alleged that the settlement agreement incorporated into the judgment for dissolution of marriage was invalid because it was predicated on decedent's fraudulent representations regarding the value of his assets. She spe-

cifically alleged that decedent submitted false financial data and failed to disclose ownership of municipal bonds valued at about $400,000. It was further alleged that decedent represented the value of his Chicago Bears Football, Inc., stock as $200,000, but the actual value was approximately $5,000,000. Petitioner stated her waiver of permanent alimony and child support was secured solely by the fraud and and misrepresentation of decedent and had she known of decedent's true net worth, she would not have accepted the agreement. Additionally, the petition alleged that decedent concealed the existence of the bonds and actual value of Chicago Bears stock from the time the judgment was entered until his death and petitioner was unable to discovery these matters. The executor's motion to strike and dismiss the petition, joined in by the guardian *ad litem*, was granted. The petition was dismissed with prejudice and without leave to amend.

First, petitioner and the guardian *ad litem* contend the trial court erred in dismissing their petition to set aside the partial revocation of and the 1978 amendment to the trust. They maintain paragraph 12(a) of the 1976 amendment clearly and unambiguously prohibits changes in the trust provisions without petitioner's consent. Consent was not given for the 1978 revocation and amendment and the petitioner and guardian *ad litem* therefore contend the partial revocation and amendment were invalid and unenforceable.

When read alone, paragraph 12(a) seems to require petitioner's consent to any changes in the trust. However, the entire agreement, not merely one isolated provision, must be considered in construing the trust instrument. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 426 N.E.2d 1198; *American Rubber & Plastic Corp. v. First National Bank* (1971), 50 Ill. 2d 172, 277 N.E.2d 840; *Vournazos v. Vournazos* (1979), 71 Ill. App. 3d 672, 390 N.E.2d 19.) Thus, paragraph 12(b) of the 1976 amendment must also be considered. In this latter paragraph, decedent reserved the right to exercise various options and privileges accorded him under the policies, to assign, transfer or pledge the policies, and to withdraw policies so long as sufficient funds in the amount of unpaid alimony remained in the trust. Paragraph 12(b) is clearly inconsistent with paragraph 12(a). Provisions which appear to be inconsistent or conflicting must be reconciled and harmonized. (*First National Bank v. Baker* (1976), 35 Ill. App. 3d 676, 342 N.E.2d 337.) In construing provisions, all language must be given meaning (*First National Bank v. Baker*) and the intent of the testator must be determined and given effect. *Vournazos v. Vournazos.*

■■ One purpose of the 1976 amendment as expressly stated

therein was compliance with paragraph 5 of the settlement agreement incorporated in the judgment for dissolution of marriage. As noted in the facts previously stated, paragraph 5 required that decedent establish and maintain an insurance trust in an amount no less than the unpaid alimony in gross due petitioner at any time, until his obligation to pay alimony ceased. Considering the purpose of the trust and construing the pertinent provisions as a whole, we find that in paragraph 12(a), decedent intended to give petitioner veto power only over that portion of the trust equal in value to the amount of unpaid alimony in gross. Were we to construe the trust in any other manner, the intent of the settlor would not be given effect and paragraph 12(b) would be rendered meaningless.

We conclude decedent properly and validly executed the 1978 amendment and the partial revocation of the 1976 trust and that such actions were valid exercises of his reserved powers. Petitioner's consent was not required because funds sufficient to provide for unpaid alimony in gross remained in trust. Therefore, we find the trial court did not err in dismissing the petition to prohibit the executor and trustee from relying on amendments subsequent to that executed in 1976.

Second, petitioner and the guardian *ad litem* contend the trial court erred in denying the petition for increased child support. The trial court found that section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(c)) permits modification of child support after the death of the obligor only if the obligor did not provide adequately for the well-being of the children through a testamentary device. Because decedent made the children beneficiaries of two trusts in which were held over $600,000 worth of assets, the trial court found that no modification of the support order was warranted. Petitioner maintains section 510(c) does not restrict modification of support payments after the death of a parent to cases where the children have been disinherited and argues that an increase in support was necessary due to the age of the children and inflation. Additionally, the guardian *ad litem* contends the best interests of the children require that petitioner, the sole surviving parent, be vested with control of the funds for support. He argues the denial of the petition for increased support effectively reduces petitioner's ability to provide for the children's needs and allows the trustee, a third party, to make important decisions affecting the children's welfare.

We first address the issue regarding section 510(c) of the Illinois Marriage and Dissolution of Marriage Act. This section provides:

■ "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but not by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances, and such determination may be provided for at the time of the dissolution of the marriage or thereafter." (Ill. Rev. Stat. 1981, ch. 40, par. 510(c).)

Prior to the enactment of 510(c), support orders were of no legal effect after the death of the obligor (*In re Estate of Lewis* (1974), 18 Ill. App. 3d 748, 311 N.E.2d 694; *Johnson v. Continental Illinois National Bank & Trust Co.* (1967), 88 Ill. App. 2d 124, 232 N.E.2d 59) and, for various reasons, children of a previous marriage often were not included in the obligor's will. (See *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 581-82, 376 N.E.2d 1382, 1390-91.) Thus, support payments for children often ceased upon the death of the obligor. Section 510(c) was designed to correct this problem and eliminate the hardship imposed upon children through loss of support by disinheritance. (Ill. Ann. Stat., ch. 40, par. 510(c), Historical and Practice Notes, at 702 (Smith-Hurd 1980); *Kujawinski*.) Considering the purpose of section 510(c), we agree with the trial court's interpretation that no modification of a support order is warranted where the person obligated to pay support has adequately provided for the children in a testamentary device.

■ Furthermore, the trial court heard evidence and reviewed documents regarding the financial resources of petitioner, the children, and the estate, the standard of living to which the children were accustomed, the physical and emotional condition of the children, and the children's educational needs. Also considered was the fact that the trustees were instructed to apply the income and principal they considered necessary or desirable for the children's support, maintenance, medical care and education. The trial court then found the trusts established by decedent and funded by assets valued at about $600,000 adequately provided for the children's needs. We agree with the trial court's finding and further note that after decedent's death, petitioner also received alimony in gross payments. These payments of $2,916.66 per month included money for the support of the children. In fact, the settlement agreement incorporated into the judgment for dissolution of marriage and the 1976 trust amendment established pursuant thereto specifically provided that alimony in gross

payments were to continue after decedent's death. This method of providing continued support is permitted under section 510(c). (Ill. Ann. Stat., ch. 40, par. 510(c), Historical and Practice Notes, at 703 (Smith-Hurd 1980).) Thus, it is clear that decedent adequately provided for the support of his children.

Furthermore, we are not persuaded by the guardian *ad litem's* argument that petitioner, as the custodial parent, should control all funds designated for the children's support and maintenance. The focal point of the statute is support of children, not control over those funds used for support. Furthermore, the settlor of the trust is free to appoint as trustee whomever he wishes so long as that person possesses the proper legal capacity and qualifications. (*In re Estate of Bockwith v. Cooper* (1930), 258 Ill. App. 411.) Thus, we do not find that the result urged by the guardian *ad litem* is legally required.

For the foregoing reasons, we find the trial court properly denied petitioner's request for increased child support.

The final issue raised in this appeal is whether the trial court erred in dismissing the section 72 petition. In deciding this question, we must bear in mind that a section 72 petition must set forth specific factual allegations supporting the following elements:

    (1) the existence of a meritorious claim or defense;

    (2) due diligence in presenting the claim or defense in the original action;

    (3) lack of fraud or negligence in failing to present an error of fact or a valid claim or defense to the trial court at the time the original judgment or order was entered; and

    (4) due diligence in filing the section 72 petition.

(*Schmidt v. Siegal Trading Co.* (1979), 72 Ill. App. 3d 611, 391 N.E.2d 32, citing *Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 386 N.E.2d 284.) Additionally, because the petition was filed more than two years after the judgment for dissolution of marriage was entered, the petition must also contain specific allegations that the party seeking relief was under a legal disability or duress or that the facts supporting relief were fraudulently concealed. (*Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 411 N.E.2d 16; *Nogle v. Nogle* (1964), 53 Ill. App. 2d 457, 202 N.E.2d 683; Ill. Rev. Stat. 1981, ch. 110, par. 72(3).) Mere allegations or general averments are inadequate to toll the two-year limitation period set forth in section 72. *Nogle.*

The trial court considered these principles in ruling on the adequacy of the section 72 petition. It granted the motions to dismiss filed by the executor and guardian *ad litem* on the grounds that petitioner failed to allege specific facts evidencing fraudulent conceal-

ment, failed to conduct reasonable and diligent discovery during the original dissolution proceeding, and failed to exercise due diligence in filing the petition. In the trial court's opinion, the latter ground, founded upon the eight-month delay between the time petitioner discovered the alleged fraud and the time she filed her petition, was fatal to the action and warranted a dismissal with prejudice. In its memorandum decision, the court stated that while it might have been possible to correct the other defects in the pleadings, petitioner could never show diligence in filing the petition.

■■ Initially, petitioner contends the eight-month delay did not exemplify a lack of diligence in filing the petition. We agree for the following reasons. Petitioner did not learn of the alleged misrepresentation until after decedent's death. She immediately filed a claim against decedent's estate. During oral arguments, the parties admitted that settlement negotiations were thereafter conducted. The section 72 petition was filed only after it became apparent that the matter could not be settled. We are reluctant to hold that a delay occasioned by settlement negotiations is fatal to a section 72 petition. Such a holding would have, in many cases, the ultimate effect of discouraging negotiations vital to the legal community and the public which it serves. In this case, petitioner diligently and conscientiously pursued her claim from the time she learned of its existence. We therefore find the delay caused by the settlement negotiations was not sufficient to warrant dismissal of the section 72 petition.

■■ Additionally, petitioner contends the complaint alleged sufficient facts indicating due diligence at the time the judgment for dissolution of marriage was entered and that the trial court's finding to the contrary was therefore erroneous. However, petitioner only alleged that she, "made very diligent efforts to ascertain the true and actual net worth of decedent." This allegation is conclusory. As noted above, the specificity rules governing section 72 petitions require that facts evidencing petitioner's diligence or lack of negligence at the time the judgment was entered must be alleged. In this case, the failure to allege sufficient facts is fatal to the petition (*International Industrial Leasing, Ltd. v. H.J. Coleman & Co.* (1978), 66 Ill. App. 3d 884, 384 N.E.2d 1), and the trial court therefore was correct in its finding on this element.

Petitioner also argues the trial court erred in finding that the section 72 petition did not allege sufficient facts evidencing fraudulent concealment of the grounds for relief from the judgment for dissolution of marriage. It should be recalled that such allegations were necessary to avoid the two-year limitation for filing a section 72 petition.

■ Ordinarily, fraudulent concealment sufficient to toll a statute of limitations consists of affirmative acts designed to prevent discovery of a cause of action or ground for relief and silence alone does not constitute fraudulent concealment. (*Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 411 N.E.2d 16; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) An exception to this general rule arises in instances where the existence of a fiduciary duty is clearly established. (*Crowell v. Bilandic; Chicago Park District v. Kenroy, Inc.*) In the case at bar, the section 72 petition did not allege facts indicating affirmative acts by the decedent to conceal the value of his assets nor did the petition allege the existence of a fiduciary duty. Therefore, the trial court's ruling on this aspect of the petition was not erroneous.

In summary, we find that the delay occasioned by settlement negotiations did not warrant dismissal of the section 72 petition. However, we agree with that part of the trial court's order dismissing the petition on the grounds that petitioner failed to allege sufficient facts which showed (1) due diligence in ascertaining decedent's net worth at the time the judgment for dissolution of marriage was entered and (2) fraudulent concealment or the existence of a fiduciary duty.

Petitioner's final contention with respect to her section 72 petition is that the trial court erred in dismissing the petition with prejudice and without leave to amend. In its memorandum order, the trial court stated the reason for such dismissal was the eight-month delay in filing the petition. The court further observed that this matter could not be cured. However, we have found this to be an insufficient ground for dismissal. The trial court also commented that the other deficiencies in the petition possibly could have been cured by amendment. We view this statement as an acknowledgement that an amendment would have been allowed had these latter two deficiencies been the bases for dismissal.

■ As noted in *Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205, 208-09:

"A fundamental purpose of the Civil Practice Act is to remove barriers which prevent the resolution of a case on its merits; to that end, the trial court's power to allow amendments should be freely exercised so that litigants may fully present an asserted cause of action [citations]. Amendment of defective pleadings should therefore be permitted unless it is clear that the defect is not curable thereby. [Citations.]"

Here, only one petition was filed. Amendments were precluded by the

trial court's dismissal with prejudice. However, the factual deficiencies possibly can be cured by amendment and petitioner should be given the opportunity to do so.

For the foregoing reasons, we affirm the orders dismissing the petition for increased child support and the petition seeking to declare the partial revocation and amendment to the trust invalid. The order dismissing the section 72 petition is affirmed in part and reversed in part and we remand this cause to allow amendment of this petition.

Orders affirmed in part, reversed in part; cause remanded.

GOLDBERG and CAMPBELL, JJ., concur.