*In re* MARRIAGE OF HENRY E. BLAINE, Petitioner-Appellee, and MARY B. BLAINE, Respondent-Appellant.

Fifth District   No. 5—91—0885

Opinion filed May 12, 1993.—Rehearing denied July 27, 1993.

Susan F. Grammer, of Bethalto, for appellant.

William J. Meacham, of Smith, Allen, Mendenhall, Delaney & Associates, of Alton, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

A judgment of dissolution of marriage as to Henry and Mary Blaine was entered on February 8, 1988. The judgment provided in pertinent part:

"[A]s and for rehabilitative maintenance, Henry Blaine shall pay to Mary Blaine the sum of $2,200.00 per month, and, in addition to rehabilitative maintenance, he shall pay the sum of $300.00 per month to be used by Mary Blaine to obtain education and training toward the goal of becoming able to obtain employment in contrast to her current status of being minimally qualified for employment; all such maintenance to be reviewed at the end of twenty-four (24) months from this date by the Court and subject to modification based upon the skills and training Mary Blaine will have received; maintenance award shall be subject to Mary Blaine's death, her remarriage or cohabitation with a male on a regular conjugal basis."

The order further provided:

"That Henry Blaine shall keep the name of Mary Blaine as beneficiary on the term life insurance policy provided by Olin on his life in the approximate amount of $670,000.00, and he shall pay premiums on such policy as long as he is eligible to have such policy provided by Olin; in the event of termination or conversion of the $670,000.00 term life insurance policy provided by Olin on the life of Henry Blaine, Mr. Blaine is ordered to exercise conversion rights he may have to another policy (not less than $250,000.00) for which he may be eligible and he

shall pay premiums thereon, providing proof of payment annually to Mary Blaine and he shall deliver such policy or policies to Mary Blaine within thirty (30) days.

That Henry Blaine shall have as his sole and separate property the Provident Life Insurance Policy, the National Service Life Insurance Policy, Connecticut Mutual Insurance Policy.

Mary Blaine is awarded ownership of the Equitable Life Insurance Policy in the event that Henry Blaine cannot obtain conversion rights to term life insurance policy provided by Olin Industries, if the original Olin policy would be terminated and the conversion factor would come into existence. Mary Blaine is awarded the Metropolitan Life Insurance Policy on her life and she shall be responsible for paying premiums on same. Henry Blaine is ordered to pay premiums on the Equitable Life Insurance Policy as same come due and provide annual proof of payment of such policy, and deliver the policy to Mary Blaine within thirty (30) days of the time he is notified a) that the $670,000.00 term life insurance policy is no longer available to him, b) he has no conversion rights to the above term life insurance policy."

On March 9, 1988, a joint stipulated order was entered by the court, striking the paragraph on maintenance, referencing that paragraph by page, paragraph, and line in the February 8, 1988, order, and substituting the following. (Note that the first paragraph elicited from the order of February 8, 1988, as set forth previously in this opinion is the paragraph on maintenance that was stricken.)

"That the Court having considered the factors of Section 504, Chapter 40, Illinois Revised Statutes concerning award of maintenance including marital property apportioned to Respondent, Mary Blaine, providing for her future needs, time necessary to acquire sufficient education or training to enable Respondent to find employment, the duration of the marriage, standard of living of the parties, Petitioner's, Henry Eugene Blaine['s], ability to pay maintenance, the ages and physical and emotional condition of both parties and the tax consequences of the property division upon the economic circumstances of the parties; therefore, as and for permanent, non-modifiable maintenance for Respondent, Petitioner shall pay to Respondent the sum of $30,000.00 per year for the first 2 years following the entry of the Judgment for Dissolution of Marriage. Payments shall be made on the first day of each month beginning with February 1, 1988, & shall be in the sum of $2,500.00 each for 24 consecu-

tive months. After the first 24 months following the entry of the Judgment, Petitioner shall pay to Respondent as and for permanent, non-modifiable maintenance, the sum of $26,400.00 per year subject to Respondent's death, remarriage or cohabitation with a male on a regular conjugal basis. Payments shall be made on the first day of each month beginning with February 1, 1990 and continuing on the first day of each and every month thereafter subject only to the contingencies aforesaid. Neither party shall have the right or the ability to petition this or any other court to modify the periodic maintenance schedule or amounts set forth herein. In addition to maintenance terminating upon the aforegoing events[,] said maintenance shall fully and absolutely terminate upon Petitioner's death, and shall not be a claim against Petitioner's estate provided Petitioner has provided Respondent with $250,000 insurance coverage as provided in Judgment of February 8, 1988, as now modified.

All payments to be made by the Petitioner to the Respondent pursuant to the provisions of this Judgment for Dissolution of Marriage will be periodic payments in discharge of a legal obligation, which, because of the marital or family relationship, is imposed on or incurred by the Petitioner under a written instrument incident to a dissolution of marriage, all within the meaning and intendment of Sections 71(a) and 215 of the Internal Revenue Code of 1954, as amended and as now in effect, and of similar provisions of future laws, and that such payments will be includible in the Respondent's gross income pursuant to Section 71(a) and will be deductible by the Petitioner from his gross income pursuant to Section 215 in determining their respective taxable income."

On September 11, 1989, Henry Blaine filed a motion for clarification of the order entered March 9, 1988. A hearing was held in November of 1989, and evidence was presented as to the status of Henry Blaine's insurance policy provided by Olin. John Mulrean, a sales representative with Metropolitan Life Insurance Company, testified that the $670,000 Olin term insurance policy was converted into a one-year $250,000 term policy naming Mary Blaine as beneficiary and a one-year $381,000 term policy naming the estate of Henry Blaine as beneficiary. In August of 1988, Henry converted these two policies into one policy for $631,000 naming as beneficiary the estate of Henry Blaine. John Mulrean explained that, pursuant to New York law, wherein Olin is domiciled, after Henry retired from Olin he had

30 days to convert his Olin insurance to a one-year term policy or forfeit the insurance. Henry Blaine converted the Olin policy to the two one-year-term policies for $250,000 and $381,000, and then within that year he converted those two policies into a single universal life insurance policy for $631,000, naming the estate of Henry Blaine as beneficiary. Mulrean testified that Blaine had no choice but to convert the term policies into the permanent universal life policy because New York law would not allow Henry to convert the term policies into term policies. Henry Blaine's new employer, Weatherby Corporation, agreed to pay $175,000 in premiums over a seven-year period in exchange for an assignment of $175,000 against the proceeds of the policy when they are disbursed.

On February 22, 1990, the court entered an order finding that the "terms and conditions of the court's orders of March 9, 1988 and February 8, 1988, as they relate to Petitioner's Motion to Modify are specific and unambiguous." The court further found:

"The Court entered judgment of dissolution on February 8, 1988 that held in part: Mary Blaine is awarded ownership of the Equitable Life Insurance Policy in the event that Henry Blaine cannot obtain conversion rights to term life insurance policy provided by Olin Industries, if the original Olin policy would be terminated and the conversion factor would come into existence. *** Henry Blaine is ordered to pay premiums on the Equitable Life Insurance Policy as same come[ ] due and provide annual proof of payment of such policy, and deliver the policy to Mary Blaine within (30) days of the time he is notified a) that the $670,000.00 term life insurance policy is no longer available to him, b) he has no conversion rights to the above term life insurance policy.

The parties entered a Joint Stipulated Order on March 9, 1988 modifying the Judgment of Dissolution of February 8, 1988. ***

The Modification Order of March 9, 1988 further specifically ordered 'said maintenance shall fully and absolutely terminate upon Petitioner's death, and shall not be a claim against Petitioner's estate provided Petitioner has provided with [sic] $250,000.00 insurance coverage as provided in Judgment of February 8, 1988, as now modified.'

The terms and conditions of the Court's orders of March 9, 1988 and February 8, 1988 *** are specific and unambiguous: Respondent's assertion that an ambiguity existed is not founded. ***

The Court finds from the evidence that Petitioner became ineligible for the specific term insurance coverage provided by Olin Industries *** through no fault or action attributable to Petitioner.

The Petitioner made and accepted the tender of the Equitable Life Insurance Policy to Respondent. This policy transfer was contingent upon Petitioner's inability to obtain conversion rights to the term life policy provided by Olin Industries under this Court's order of March 9, 1988.

The Court finds from the testimony of Petitioner, and that of John Mulrean, *** that Petitioner could not convert the Olin term contract past a one year period ***.

The insurance coverage obtained for Petitioner by the Weatherby Company was not referred to or contemplated by the Court's specific terms of the Court's prior Order of February 8, 1988, or as modified by the Order of March 9, 1988. The Court further finds from the evidence that Petitioner had no control over the procurement of the policy which was universal and not a term type policy. Thus the Weatherby policy on Petitioner's life cannot be considered by the Court in its decision.

The Court *** finds and orders the maintenance obligation of Petitioner to Respondent to fully and absolutely cease and terminate on Petitioner's death. Respondent's only claim against Petitioner's estate shall be the monthly maintenance owed by Petitioner to Respondent up to the date of his death."

The trial court denied Mary Blaine's motion to vacate the order. Mary Blaine appeals.

Mary points out that the March 9, 1988, joint stipulated order retained the three events of termination that were in the original judgment of dissolution: Mary's death, remarriage, or conjugal cohabitation. A fourth maintenance-terminating event was added:

"In addition to maintenance terminating upon the aforegoing events[,] said maintenance shall fully and absolutely terminate upon Petitioner's death, and shall not be a claim against Petitioner's estate provided Petitioner has provided Respondent with $250,000 insurance coverage as provided in Judgment of February 8, 1988, as now modified."

Mary argues that in addition to establishing a fourth maintenance-terminating event, this particular provision provided Mary security in that maintenance would not cease upon Henry's death unless he furnished a $250,000 insurance policy on his life. She maintains that such

an insurance policy is separate and in addition to the Equitable life insurance policy to which she is entitled.

Mary argues that the joint stipulated order made maintenance permanent and nonmodifiable. She contends that the order tightened the insurance as security by giving Henry the choice of either furnishing a $250,000 policy on his life or having his estate stand liable for all maintenance installments that would accrue beyond his death and until Mary's death.

Henry maintains that Mary's position is without merit. He argues that the trial court properly found that no ambiguity existed in the orders entered February 8, 1988, and March 9, 1988. The March 9, 1988, order, which modified the February 8, 1988, order, specifically stated with reference to page, paragraph, and line the portions of the February 9, 1988, order which were stricken. Henry argues that the March 9 order specifically stated that maintenance payments fully and absolutely terminated upon Henry's death and shall not be a claim against his estate provided he has provided Mary with insurance coverage as provided in the judgment of February 8, 1988, as modified. That part of the February 8, 1988, order referring to conversion rights to a term life insurance policy provided by Olin Industries and to the Equitable insurance policy, ownership of which was awarded to Mary in the event that Henry could not obtain conversion rights to the aforementioned term life insurance policy provided by Olin, was not stricken from the February 8, 1988, order by the specific terms of the March 9, 1988, order. Henry maintains that because the Olin insurance was terminated through no fault of his, Mary is entitled to the Equitable life insurance policy. He argues that beyond that, he need not secure another insurance policy in Mary's name, nor need his estate pay maintenance beyond his death.

At oral arguments in this case, the parties made much of the question of who drafted the joint stipulated order. Husband claimed that wife's attorney drafted it and, therefore, it should be construed liberally in his favor. Wife argued that the joint stipulated order was a document prepared jointly by the parties' attorneys and because it is a guarantee contract it should be construed in favor of the creditor, who is the wife in this case. The argument concerning in whose favor the document should be construed assumes that the document is ambiguous. (See *First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 530 N.E.2d 521.) Without delving into the debate over the identity of the drafter, we turn first to an examination of the court's orders of February 8, 1988, and March 9, 1988.

■ Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 502(f)) permits parties to expressly preclude or limit the modification of terms set forth in a judgment except for terms concerning the support, custody, or visitation of children. Provisions of divorce judgments are construed by applying the same rules as those governing the construction of contracts. (*In re Marriage of Sherrick* (1991), 214 Ill. App. 3d 92, 96, 573 N.E.2d 335, 338.) The principal objective in construing a contract is to give effect to the parties' intentions, which are to be derived by reference to the contract as a whole. *In re Marriage of Oldham* (1991), 222 Ill. App. 3d 744, 750, 584 N.E.2d 385, 390.

The March 9, 1988, order provides:

> "[M]aintenance payments fully and absolutely terminate upon Henry's death and shall not be a claim against his estate provided he has provided Mary with insurance coverage *as provided in the judgment of February 8, 1988 as modified.*" (Emphasis added.)

The italicized portion of this paragraph refers to the order of February 8, which in turn refers to the Olin insurance policy and Mary's right to the Equitable life insurance policy in the event the Olin policy is terminated.

■ Under the terms of the February 8, 1988, order, Henry was required to attempt to convert his $670,000 term life policy in a manner which would provide a minimum of $250,000 coverage to Mary. The same order also provided that if Henry was unable to obtain conversion rights to the Olin term life policies Mary was to be awarded ownership of the Equitable life insurance policy. The only evidence elicited at the hearing established that Henry was unable to convert the Olin term life policy. This inability brought into play the safety valve of the award of the Equitable life insurance policy.

Contrary to Mary's argument, the two court orders do not specify that Mary is to receive maintenance beyond Henry's death except for her right to the Equitable policy. In fact, the order of March 9, 1988, specifically provides that maintenance shall terminate upon Henry's death and shall not be a claim against his estate.

We affirm the decision of the trial court.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.