*In re* MARRIAGE OF JOAN S. OLDHAM, Petitioner-Appellee, and ELIZA-BETH OLDHAM, Ex'r of the Estate of J. Rufus Oldham, Respondent-Appellant.

First District (2nd Division)   Nos. 1—89—0965, 1—89—3527 cons.

Opinion filed December 3, 1991.

Schiller, Du Canto & Fleck, Ltd., of Chicago, and Snyder, Clarke, Dalziel & Johnson, of Waukegan (Julian Johnson, of counsel), for appellant.

Altheimer & Gray, of Chicago (John K. Chatz, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This is an appeal by respondent, Elizabeth Oldham (Elizabeth), widow of decedent J. Rufus Oldham and executor of his estate. Before his marriage to Elizabeth, Rufus was married to petitioner, Joan Oldham (Joan). During this latter marriage Rufus and Joan adopted two children, Christopher and Jodie. Rufus and Joan were divorced after which Rufus married Elizabeth. By the time this action was filed, the children were adults.

Two Cook County circuit court orders allowed Joan's claim for Christopher and Jodie's college expenses made against the estate. Elizabeth questions whether (1) the Cook County circuit court had jurisdiction to enter the order for college expenses of adult children, without the existence of an intervening order; (2) the responsibility for college expenses was governed by a property settlement incorporated in the divorce judgment or the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*); (3) DeVry Institute of Technology (DeVry), chosen by the children, is a college or university within the meaning of the settlement agreement; and (4) Civil Practice Law section 2—1401 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) (section 2—1401) relief was properly granted to Joan.

Rufus and Joan's divorce decree, entered by the Cook County circuit court domestic relations division on August 20, 1968, incorporated a dissolution agreement covering custody, support payments, and property distribution. The clause at issue here provides:

"Husband covenants and agrees that, provided he is then financially able so to do, and further provided that the minor children aforesaid respectively evince an interest in and scholastic aptitude for the same, he will pay all necessary and reasonable expense incident to an education at the college or university level for each of the aforesaid minor children, which said obligation shall survive the attainment by the said children of the age of majority if the same shall be necessary to provide completely such education."

Rufus' mother, Irene, died in 1984, leaving a substantial estate to Rufus. Until then, he was a $27,000-per-year accountant. Rufus died 10 days after his mother, on April 6, 1984. Rufus' estate was probated in Lake County, Illinois, and Elizabeth, his surviving spouse, was named executor. Joan filed claims against the estate for tuition expenses, *inter alia*, in the Lake County circuit court, probate division on February 28, 1986. Elizabeth's motions to dismiss these claims were denied. While these claims were pending, Joan filed an enforcement action in the domestic relations division of the Cook County circuit court on April 29, 1986. Joan then filed a verified petition to substitute Elizabeth, as executor of Rufus' estate, as a party, seeking an order to enforce the divorce decree settlement agreement requiring payment of Jodie and Christopher's educational expenses and insurance proceeds. Elizabeth attempted to have the petition dismissed, and Joan filed an amended petition on April 2, 1987.

Following a bench trial, the Cook County circuit court, on July 15, 1987, entered an order allowing the claim for college expenses (sometimes the July 15 order),[1] and directing the executor to pay the reasonable and necessary expenses incident to Jodie Oldham attending Western Illinois University or a comparable college or university on a semester-by-semester basis; and incident to Christopher Oldham attending Oakton Community College or a comparable college or university on semester-by-semester basis. Payment was made conditional upon proof of the children's acceptance, good standing, and maintenance of a "C" average. Elizabeth sought reconsideration of the order, arguing, *inter alia*, that the petition failed to state a cause of action because support payment actions do not survive the death of a spouse. On January 5, 1988, the parties

---

[1]The circuit court denied the petition as to the issue on the claim for insurance proceeds; that portion of the decision is not raised as an issue in this appeal.

agreed to an order wherein the motion to reconsider was withdrawn.

Following the January 5 action, Joan sought to have the educational expense claim recognized by the Probate Division of the Lake County circuit court on January 20, 1988. Joan's emergency motion to advance funds, filed March 1, 1988, based upon the July 15 order was refused, the court finding that the enrollment of the Oldham children at DeVry did not constitute a college or university as contemplated by the July 15 order. The Lake County court also found that Joan failed to submit to the executor proof regarding educational expenses, grades, and other items required by the July 15 order.

Joan filed an emergency motion in the Cook County circuit court on March 8, 1988, seeking to clarify the July 15, 1987, order. In response, Elizabeth moved for involuntary dismissal, asserting that the July 15 order was final and that the Cook County circuit court lacked jurisdiction to hear the motion. On March 30, 1988, the Cook County circuit court granted Elizabeth's motion. Joan then moved for reconsideration of the dismissal, citing section 2—1401, alleging due diligence and a meritorious claim. The circuit court of Cook County allowed her motion and scheduled a hearing on the matter.

At hearings on the petition, which began on March 28, 1988, Dr. Leroy Sullivan, DeVry's dean of academic affairs and chief academic officer, testified that DeVry offers an associate's degree, a baccalaureate, and a master's degree. The baccalaureate of science is awarded in engineering, electronics technology, computer information systems, business operations, and accounting. DeVry is accredited by the North Central Accrediting Region, and is approved by the Illinois State Board of Higher Education. Sullivan stated that the business operations program was "akin" to a "bachelor's [sic] in business administration with a computer applications orientation." DeVry students are expected to maintain a 2.0 grade point average. The program is 132 semester hours in length and contains "traditional" college courses including "the liberal arts components of an academic program." The difference between DeVry's program and the more "traditional" bachelor's degree in business administration is that the traditional approach focuses on theory and research more than practical applications. As compared to Oakton Community College (Oakton), Sullivan stated that Oakton "does not offer the level or scope of programming that DeVry does" and that DeVry's curriculum is "superior" to Oakton's. In comparing DeVry

with Western Illinois University (Western), Sullivan averred that the business operations program at DeVry was "comparable" to a similar program at Western.

Jodie Oldham testified that she attended Oakton following high school, from 1982 through 1986 or 1987. During that time, she was accepted for admission at both Western and Southern Illinois University, but did not attend any classes at either institution. In January 1988, she began her study at DeVry, where she is currently pursuing her bachelor's degree, concentrated in business operations and management. Her grade point average is 2.10, and she is currently carrying six classes. She attends class daily, except on Wednesdays, and also holds two jobs. Both jobs require weekend work schedules and hours on Wednesday. Jodie received a student loan; however, her account at DeVry was $500 in arrears.

Following graduation from Glenbrook North High School in 1980, Christopher Oldham enrolled at Oakton and received passing grades in all but two classes. In November 1987, he left Oakton and started at DeVry, where he, too, is studying business operations. He is currently taking five courses and three labs. Christopher met some of his financial obligation by securing a guaranteed student loan and by paying the rest from his own earnings. He is employed by Evanston Hospital and works weekends.

Elizabeth presented the testimony of Dr. Steven Crow, deputy director of the Commission of Institutions on Higher Education, North Central Association of Colleges and Schools. He stated the American Assembly of Collegiate Schools of Business was the only agency that accredits business programs at the undergraduate level, but DeVry is not so accredited.

Elizabeth's motion to dismiss the petition, raising questions as to whether the petition adequately met the statutory requirements of section 2—1401, was denied on July 19, 1988. On January 12, 1989, the Cook County circuit court granted Joan's section 2—1401 petition and amended the July 15, 1987, order by including DeVry as an acceptable college in the order and by waiving the 30-day notice period with respect to funds to be paid through the date of the order. Elizabeth subsequently filed a section 2—1203 motion on February 10, 1990, which Joan moved to strike on March 1, 1990. Although this motion was still outstanding, Elizabeth filed a notice of appeal on April 11, 1989, seeking review of the circuit court's orders of June 28, 1988, July 19, 1988, and January 12, 1989. Upon discovery of the premature appellate filing, Elizabeth was given leave by this court to withdraw the appeal. Upon disposition of the

post-trial motion, the estate filed a second notice of appeal on December 28, 1989 (appeal No. 1—89—3527), and was given leave to reinstate number 1—89—0965 and consolidate the two appeals. The second notice of appeal seeks review of (1) the July 15, 1987, order; (2) the June 28, 1988, order; (3) the July 19, 1988, order; and (4) the January 12, 1989, order, allowing the section 2—1401 petition.

## I

Elizabeth initially argues that the circuit court of Cook County lacked jurisdiction to enter the July 15, 1987, order allowing the claim for the college expenses of the adult children.

Courts in divorce proceedings retain jurisdiction to enforce their decrees. (*In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 112, 438 N.E.2d 957; *Crawley v. Bauchens* (1973), 13 Ill. App. 3d 791, 795, 300 N.E.2d 603.) Elizabeth contends, however, that Joan's petition failed to state a cause of action upon which relief can be granted because no order pursuant to section 513 of IMDMA (Ill. Rev. Stat. 1987, ch. 40, par. 513) (section 513) was entered into by the parties prior to Rufus' death, citing *In re Estate of Champagne* (1987), 153 Ill. App. 3d 560, 505 N.E.2d 1352, thereby removing the only legal basis for Joan's action. Although Elizabeth failed to raise in the circuit court her argument concerning Joan's purported failure to state a cause of action, where a complaint fails to state a cause of action, an objection may be made to it any time and by any means, and such an objection may be raised for the first time on appeal. *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 974, 447 N.E.2d 1358; *Ording v. Springer* (1980), 88 Ill. App. 3d 243, 410 N.E.2d 428; *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552.

In *Champagne*, the former wife filed a claim against her former husband's estate for the educational expenses of their adult son. The claim was made pursuant to (1) the couple's July 1966 judgment of divorce, which provided that decedent would pay for their son's college education; and (2) a July 1983 stipulation and agreed order which provided that decedent would pay $400 per month for the son's college expenses. The estate moved to strike the claim, arguing that the monthly payments were made until decedent's death and that no provision of the Act allowed for higher education expenses to be charged against an estate. The circuit court dismissed the claim, finding that the order for the adult child's educational expenses did not obligate the estate.

In reversing the dismissal, the *Champagne* appellate court noted that prior to the passage of the Act, a child support order in a divorce decree had no legal effect after the death of one of the parties. (See *In re Estate of Lewis* (1974), 18 Ill. App. 3d 748, 750, 311 N.E.2d 694; *Johnson v. Continental Illinois National Bank & Trust Co.* (1967), 88 Ill. App. 2d 124, 133, 232 N.E.2d 59.) The Champagnes' agreed order, however, was made pursuant to section 513. Sections 513 and 510(c) (Ill. Rev. Stat. 1987, ch. 40, pars. 510(c), 513), when read together, avert the harsh result rendered under the prior law. (*Champagne*, 153 Ill. App. 3d at 562.) Section 510(c) now provides that "the obligation to support, unless otherwise agreed in writing or provided in the judgment, will survive the death of the parent obliged to provide child support." (*Champagne*, 153 Ill. App. 3d at 562.) The court further ruled that section 510(c) applies not only to minor children, but to children who have reached the age of majority, by virtue of section 513's language. *Champagne*, 153 Ill. App. 3d at 563.

Elizabeth nevertheless argues that neither party here sought enforcement or modification of the 1968 decree under IMDMA; therefore, the circuit court erred in allowing the claim to survive Rufus' death. The absence of such an "intervening order" in the case *sub judice* distinguishes it from *Champagne*, Elizabeth urges, since the lack of such an order leaves the instant action beyond the purview of IMDMA, and the effect of the prior law is unavoidable. We disagree.

In Illinois, a property settlement between spouses whose marriage is being dissolved, which has been approved by the court and incorporated in the judgment of dissolution, becomes merged in the judgment, and the rights of the parties thereafter rest on the judgment. (*Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 708, 467 N.E.2d 926; *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 399, 395 N.E.2d 1209.) In interpreting such an agreement, normal rules for construction of contracts apply (*In re Estate of Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366) so as to give effect to the apparent intent of the court and the intention of the parties. (*Sondin v. Bernstein*, 126 Ill. App. 3d at 708.) When no ambiguity exists on the face of the judgment, the intent of the parties will be determined only from the language of the instrument itself. *Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.

■ The specific language in the settlement agreement clause before us demonstrates Rufus' promise to pay educational expenses, provided he has the financial ability to pay and the children's scho-

lastic aptitude is present. In *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015 (*Houston*), the appellate court held that the settlement agreement requiring payment of college tuition and expenses, rather than section 513, was controlling in an enforcement action:

> "We believe that respondent's reliance on section 513 is misplaced. That provision deals, in relevant part, with court-awarded payments for the education and maintenance of the parties' children *** after a marriage has been dissolved. *** This case, however, does not involve an initial award of payments for educational expenses made by the court at the time of dissolution or in a post-decree motion [citation], or even a request for modification of such an award. Nor is this a situation where the original dissolution decree reserved the question of educational expenses for future consideration." (*Houston*, 150 Ill. App. 3d at 613-14.)

The court held that section 513 need not be applied when the settlement agreement clearly addresses the issue of maintenance and educational expenses. We find *Houston* applicable to this case.

The present case involves a claim to enforce a settlement agreement which previously had been incorporated into the dissolution judgment of the court. The agreement here established Rufus' obligation to pay for the children's college expenses even where they attained their majority, subject only to his financial ability to pay and the children's aptitude for higher education. The fact that Rufus died before his ability to pay was adjudicated did not mitigate that responsibility. Section 801 of IMDMA (Ill. Rev. Stat. 1987, ch. 40, par. 801) applies IMDMA to all proceedings commenced on and after the effective date of the Act, October 1, 1977. This post-decree proceeding is subject to IMDMA. (*Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 503, 424 N.E.2d 714; *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 895, 416 N.E.2d 366.) Section 510(c) of the IMDMA (Ill. Rev. Stat. 1987, ch. 40, par. 510(c)) protects children of divorced parents from disinheritance. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 580-82, 376 N.E.2d 1382.) Otherwise, the fortuitous death of Rufus would thwart the intent of the parties and the court, with serious prejudice to the intended beneficiaries of the agreement, the children.

Accordingly, the terms of the agreement at issue here leave no question of Rufus' obligation to pay the children's educational expenses. The lack of any court order mandating contribution to the

children's college expenses prior to Rufus' death did not foreclose contribution from the estate after his death.

Joan's claim for educational expenses against the estate stated a cause of action upon which relief could be granted. The order to that effect entered on July 15, 1987, by the circuit court of Cook County is affirmed.

## II

Elizabeth next contends that the circuit court failed to follow the settlement agreement when it allowed the Oldham children to attend DeVry, an issue centering upon whether DeVry is a "college or university" as defined in the settlement agreement and, if so, whether it is comparable to Western or Oakton.

A similar issue, relating to what constitutes a college, was raised in *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 536 N.E.2d 946. There, the court concluded that the term "college or professional school" used in the settlement agreement at issue was unambiguous: " 'While the word [college] has other meanings, *** in its most common use 'college' designates an institution of learning *** which offers instruction in the liberal arts and humanities and in scientific branches, but not in the technical arts or those studies preparatory to admission to the professions.' " (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 203, quoting 14 C.J.S. *Colleges & Universities* §1 (1939).) The court held that the term "college" refers to the "undergraduate study in the liberal arts or sciences leading, usually after four years, to a bachelor's degree." (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 204. Accord *Brown v. Brown* (1984), 327 Pa. Super. 51, 55, 474 A.2d 1168, 1170 (and cases cited therein).) In so holding, the court ruled that the Denver Automotive and Diesel College is not what is customarily referred to as a college or professional school. (*In re Marriage of Holderrieth*, 181 Ill. App. 3d at 205.) The evidence presented revealed that the school's program lasted only 15 months; upon completion of the program, students were awarded a two-year associate's degree; the school taught only automobile and diesel mechanics; and students received no instruction in English, literature, social studies, math, or the fine arts.

In contrast here, Dr. Sullivan testified that DeVry offers a baccalaureate degree in four academic areas including electronic engineering, computer information systems, accounting, and business operations. Both the Oldham children are pursuing degrees in the business operations program, described by Sullivan as roughly

equivalent to a bachelor's degree in business administration. Moreover, students enrolled in the program are required to take traditional liberal arts courses such as English composition, speech, and writing. The school offers associate's degrees as well as a master's degree and is accredited by the appropriate regional association of colleges and schools.

Based upon the language used in the settlement agreement and the evidence adduced at the hearing, we find no error in the circuit court's ruling that DeVry was a college or university under the terms of the settlement agreement.

The evidence also supports the court's holding that DeVry was comparable to Oakton and Western. It was established that Oakton only offers its students a two-year associate's degree, whereas DeVry offers a bachelor's and a master's degree. As for Western, Sullivan stated that the degrees sought by the Oldhams were equivalent to Western's bachelor's degree in business administration. The only difference cited was in the teaching philosophy each school followed, with Western adopting a more theoretical manner of study and DeVry utilizing a more practical approach. Elizabeth attempts to characterize Sullivan's statement of the comparability of the two programs as an overall statement of comparability between the schools as a whole. A careful review of his testimony reveals, however, that Sullivan merely described the two business programs as being "comparable." The relevant inquiry is whether the two institutions offer comparable education in the area of business administration or business operations. The quality of the education at one institution may differ greatly from another; however, the settlement agreement does not condition educational expenses on the quality of the education to be received. The circuit court's ruling that DeVry is comparable to Oakton or Western was not erroneous and must be affirmed.

### III

Elizabeth lastly asserts that the circuit court abused its discretion by granting Joan's section 2—1401 petition.

Section 2—1401 of the Code provides a statutory mechanism by which a final order or judgment may be vacated or modified more than 30 days after its entry. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220, 499 N.E.2d 1381; *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 837, 449 N.E.2d 560.) A petition brought under this provision is not a continuation of the original proceeding, but a commencement of a

new cause of action with the purpose of bringing to the attention of the circuit court facts not of record which, if known by the court at the time judgment was entered, would have prevented its rendition. (*Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 239, 454 N.E.2d 806; *Manning v. Meier*, 114 Ill. App. 3d at 837-38.) The petitioner must affirmatively set forth four elements under section 2—1401 to be entitled to relief: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting that claim or defense in the original action; (3) due diligence in presenting the section 2—1401 petition; and (4) misapprehension of the circuit court with regard to the facts, the valid defense or claim through no fault or negligence of petitioner, at the time the challenged order or judgment was entered. (*Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 148, 496 N.E.2d 1045.) The question of whether a section 2—1401 petition should be granted lies within the discretion of the circuit court; its judgment will not be disturbed absent an abuse of that discretion. *Smith v. Airoom, Inc.*, 114 Ill. 2d at 221.

■ Elizabeth maintains that Joan did not meet the statutory requirements of section 2—1401. The record demonstrates otherwise. The petition was timely brought, well within the statute's two-year time limitation. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) In fact, Joan filed her action immediately after the circuit court of Lake County denied enforcement of the July 15 order. She could not have acted more diligently under these circumstances.

Joan's petition also asserted facts which set forth the existence of a meritorious claim. She alleged that the July 15 order allowed the claim to be made against the estate in addition to the fact that (1) the children needed funds for their educational expenses; (2) they were attending DeVry Institute of Technology; and (3) the Lake County court refused to recognize DeVry as "comparable" to those institutions listed in the July 15 order. Joan could not have anticipated that the Lake County court would rule DeVry incomparable to Western at the time the original order was entered. Upon this record, the circuit court did not abuse its discretion in modifying the July 15 order.

For the foregoing reasons we affirm the circuit court orders in Nos. 1—89—0965 and 1—89—3527.

Affirmed.

DiVITO and McCORMICK, JJ., concur.