*In re* MARRIAGE OF NANCY L. DIETER, n/k/a Nancy L. Williams, Petitioner-Appellee, and ROLAND A. DIETER, Respondent-Appellant.

First District (5th Division)   No. 1—92—3947

Opinion filed March 17, 1995.

Roland L. Bell & Associates, P.C., of Deerfield, and J. Scott Bonner and Janet E. Boyle, both of Chicago, for appellant.

Engelman & Smith, of Skokie (Stephen B. Engelman, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Respondent, Roland A. Dieter, appeals from two orders of the trial court: (1) an order of December 10, 1991, which (a) entered a judgment in favor of petitioner, Nancy L. Williams, in the amount of $12,196.95 for past-due college expenses for the parties' child, David; and (b) required respondent to pay all of David's education costs, including fees for flight instruction associated with the attendance of David at the University of North Dakota; and (2) an order of October 2, 1992, which (a) required respondent to contribute $5,064.95 to petitioner's attorney fees; and (b) denied respondent's petition for attorney fees. Petitioner cross-appeals from the trial court's order of December 10, 1991. On appeal, respondent contends that the trial court erred in: (1) determining that flight costs are required fees for a "college education" as that term is contemplated by the parties in the marital settlement agreement; (2) declining to take into consideration the other resources of David in assessing respondent's obligation to pay for flight costs; (3) determining that respondent was required to pay up to $16,000 per year for future college education expenses; and (4) holding respondent in contempt and granting petitioner an award of attorney fees. Petitioner, in her cross-appeal, contends that the trial court, in determining the amount of respondent's obligation for David's education expenses, erred in considering other resources of David and petitioner.

We affirm.

BACKGROUND

Petitioner and respondent were married on April 2, 1964, in Pittsburgh, Pennsylvania. On June 1, 1971, the parties' only child,

their son David, was born to the parties. No other children were born to or adopted by the parties.

On January 7, 1975, petitioner filed a complaint for divorce, and, pursuant to the proceedings in the case, a judgment for divorce was entered on February 24, 1975. The judgment for divorce incorporated a marital settlement agreement between the parties which provides, in pertinent part, as follows:

"14. ROLAND shall pay for the college school education of DAVID. By 'college' school education of DAVID' [*sic*] there is meant and included, but not by way of limitation, tuition, books, supplies, registration and other required fees, board, lodging, sorority or fraternity dues, assessments and charges, and round trip transportation expenses between the college and the home of the child (if the child is in attendance at an out-of-town college), those round trips not to exceed four in any calendar year.

Further ROLAND'S obligation is conditioned upon the following:

a. David has at that [t]ime the desire and aptitude for a college education.

b. The college education is limited to a [*sic*] four consecutive years after graduation from high school, except the time shall be extended in the case of serious illness or military service.

c. ROLAND'S [*sic*] has the financial ability to pay such college expenses.

The decision affecting the education of DAVID regarding college shall be made jointly by the parties and shall consider the expressed preference of the child, but neither party shall unreasonably withhold his or her consent to the expressed preference of the child."

On October 10, 1990, petitioner filed a petition requesting the trial court to enter an order requiring respondent to show cause, if any, as to why he should not be held in contempt of court. In the petition, petitioner asserted that: (1) pursuant to the marital settlement agreement, respondent was required to pay for the education expenses of David until David attained his majority or completed his college education, whichever was the last to occur; (2) David was then enrolled in college and for the fall semester of 1990, David incurred education expenses totalling $7,656.87; (3) respondent had reimbursed David and petitioner in the amount of $3,953 toward those expenses; (4) although often requested to pay for the rest of the education expenses, respondent both failed and refused to pay for such expenses; (5) respondent had failed to pay plaintiff for child support since June 1989; (6) there was $4,200 due to petitioner for child support through October 1990; and (7) petitioner is entitled to reasonable attorney fees and costs incurred in pursuance of the petition.

On March 6, 1991, petitioner also filed a petition seeking a rule to show cause as to why respondent should not be held in contempt of court for failing and refusing to pay for the education expenses of David, who had been enrolled in the University of North Dakota since the fall of 1989, in compliance with the marital settlement agreement.

On February 25, 1991, the trial court began a hearing based on petitioner's petition for rule to show cause in connection with petitioner's claim that respondent had failed to pay for the education expenses of David. The hearing continued through November 1991. Three witnesses testified during the course of the hearing: (1) David; (2) petitioner; and (3) respondent.

David testified that even though he resided in Evanston, Illinois, he had been enrolled at the University of North Dakota since the fall of 1989 and was in his second semester of his sophomore year.

Throughout high school, mostly during his senior year, he worked about 40 hours a week and had approximately $12,000 in his possession before entering college, some of which had been put to his college education. He also plans to use the rest for his education. He has received approximately $1,300 in financial aid. He plans to work to earn more money to use for his education during the summers of his years at the University of North Dakota. He also stated that he is a resident of North Dakota for tuition purposes, but did not apply for a resident tuition fee prior to December of 1990.

At the University of North Dakota, he began taking classes leading to a bachelor's degree in the college of airway sciences. There were no requirements to take flight instruction until after the first year. While his course study focuses on aviation, the curriculum of the airway science program includes courses in liberal arts such as math, science, English, and courses in the humanities. The curriculum also incorporates flight instruction whereby a student is required to take a certain number of hours in flight time leading to a flight certificate. He is required to take approximately 200 hours in flight instruction in order to attain a degree from the college of airway sciences. Both before and subsequent to applying to college, he had numerous discussions with his father relative to his application to the University of North Dakota.

David further testified that respondent paid for his course instruction for his freshman year at the university. After discussing the matter with respondent, he later changed his major to aviation administration because even though that major involves course study in the college of airway sciences, it has more of a foundation in business-type courses. A major in aviation administration also

requires flight instruction, which costs a fee separate and apart from tuition. He testified that respondent was aware that a degree in aviation administration involved flight instruction.

During the summer of 1990, as part of his course study in airway sciences, he took an aviation course which was worth five credit hours. While a full college load is normally 12 hours for the fall and spring semesters, a full load for the summer semester is six credit hours. He incurred both tuition and flight costs for his summer school course load in the amount of $6,258.13, none of which respondent paid and all of which David paid. Approximately $1,260 was spent for tuition, $550 for room and board, $94.50 for flight manuals, $26.04 was spent for books, and $4,340 was spent for flight costs. He did not request this money from respondent because he felt that it was his responsibility. In addition, his expenses for the fall semester of 1990 were, at a minimum, $7,501.70, of which respondent paid for room and board and tuition in the amount of $4,153. He also testified that the total amount of his expenses for the spring 1991 semester was $6,596.15 and that thus far the total amount of his expenses for the fall 1991 semester was $5,600.33. Of the $6,596.15 spent for the spring 1991 semester, $3,885 was spent for flight instruction and $1,020 was spent for basic tuition. The fall 1991 semester was thus far paid by a $4,000 check of his, $1,000 from petitioner, a guaranteed student loan and a Perkins loan which together totalled $1,307, and a contribution by a friend of petitioner.

Petitioner testified that she was under the impression that respondent was required to pay for David's education expenses until the child reached maturity or completed college, whichever comes last. When David entered the University of North Dakota in the fall of 1989, she was of the understanding that flight time was part and parcel of the degree which he was pursuing.

Respondent paid for David's education expenses in the fall of 1989, but did not pay all of the expenses for the spring semester of 1990. Respondent did not pay for room and board, tuition, travel time, and flight expenses. Petitioner advanced David sums of money, approximately $9,000, to help with his college education expenses. With regard to the fall semester of 1990, petitioner believed that respondent paid all expenses except for the flight costs. Petitioner withdrew the money from her retirement funds and from her salary and also received some money from a friend of hers.

Petitioner has been married twice since she divorced respondent. In either 1983 or 1984, David changed his surname from that of respondent to Williams. Petitioner manages an office for Dean Prosthetic and Orthodontic Services and earns a salary of $33,000 a year. She has been employed there for four years.

Respondent testified that since his divorce from petitioner, he remarried in 1976 and has two children by his current wife. He currently owns his own company and serves as its president, treasurer and financial consultant. His company, Knights Financial Round Table, Inc., was incorporated in September of 1990. He is the sole employee of his company, which earned a gross income of $14,000 through September 1991. Prior to his employment with Knights Financial Round Table, Inc., he worked from 1974 to 1990 at Washington National Insurance Company as lead annuity actuary. His employment ceased with Washington National on March 1, 1990, at which time he received severance pay for eight months.

At the time his employment with Washington National terminated, he was earning around $82,000 a year. When his employment with Washington National terminated, he received over $100,000 in distributions. The thrift plan distribution amounted to approximately $100,146.72 and the pension distribution amounted to approximately $67,904.04. The joint income for himself and his wife for the tax year of 1989 was $139,671. He believes that approximately $65,000 was his wife's income. In addition, he owns approximately half of the house in which he currently resides, which he believes has a current value of $250,275, even though there is a total of $42,000 in loans which are outstanding from the house.

At the time that he was divorced from petitioner, he received a distribution of an ownership in a piece of property which he subsequently conveyed to his current wife. That building was subsequently sold for approximately $100,000. He also has approximately $12,000 in individual retirement accounts and two small savings accounts of under $500. He also had stocks and bonds listed on his 1989 tax return in the amount of $2,513. His 1989 tax returns also showed about $4,000 in interest earned, about $4,000 in tax-exempt interest earned, and dividend income of about $2,000. Respondent also held a custodial account in his name for David.

In 1989, respondent had a number of conversations with his child regarding David's plans for college. He testified that he did not support his child's desire to become a pilot, even if he received a college degree in the process.

He received from David the bills from the University of North Dakota for flight costs, tuition, and room and board. He paid David's tuition for the fall of 1989 and for the spring of 1990. However, he did not pay for the summer school semester of 1990. He testified that his payment of a portion of the education expenses for the fall of 1990 was, in retrospect, a mistake. Although he paid approximately $4,000 in September of 1990, he did not pay anything after September of 1990.

On December 3, 1991, the trial court entered an order determining that respondent was in willful violation of the marital settlement due to his failure to pay the college education expenses of David. On December 10, 1991, the trial court entered an order which determined that: (1) the parties believed that child support expired in June 1989; (2) the marital settlement agreement required respondent to pay for all of David's college education expenses including, but not limited to, expenses for: (a) tuition, (b) room and board, and (c) books; (3) the University of North Dakota is a "college or university" as those terms are used in the parties' marital settlement agreement; (4) respondent is required to pay "flight fees" as those fees are required as part of David's curriculum at the University of North Dakota; (5) despite respondent's change in circumstances with his employment, he has sufficient assets to pay for the education expenses in connection with David's college education; (6) respondent's obligation is limited to four years; and (7) respondent's failure to pay the college education costs incurred was a willful violation of the marital settlement agreement.

On December 16, 1991, petitioner filed a petition seeking attorney fees from defendant in connection with her petition seeking respondent's compliance with the parties' marital settlement agreement. On January 10, 1992, respondent filed a petition seeking attorney fees from petitioner based on the portion of the trial court's order of December 10, 1991, which determined that both parties believed that child support expired in June 1989. In respondent's petition, he claimed that: (1) even though petitioner believed that child support had terminated in June 1989, she persisted on going to trial; and (2) petitioner's petition in support of this issue was not well grounded in fact and was interposed to harass and needlessly increase the costs of the litigation.

On October 2, 1992, the trial court entered an order which: (1) required respondent to contribute $5,064.95 to the attorney fees of petitioner pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (see 750 ILCS 5/508(b) (West 1992)); and (2) denied respondent's petition for attorney fees.

On October 30, 1992, respondent filed a timely notice of appeal from: (1) the trial court order of December 10, 1991, which: (a) entered judgment in favor of petitioner and against respondent in the sum of $12,196.95 for past-due college expenses for David; and (b) required respondent to pay all college education costs, including fees for flight instruction, associated with the attendance of David at the University of North Dakota; and (2) the trial court order of October 2, 1992, which: (a) required respondent to contribute $5,064.95 to petitioner's

attorney fees; and (b) denied respondent's petition for attorney fees. On November 4, 1992, petitioner filed a notice of cross-appeal from the trial court's order of December 10, 1991, which entered judgment in favor of petitioner and against respondent in the amount of $12,196.95 for past-due college expenses of David.

OPINION

I

Initially, respondent contends that the trial court, in its order of December 10, 1991, erred in determining that flight costs, which are vocational in nature, are required "fees" for a college education as contemplated by the parties in their marital settlement agreement. Respondent relies upon this court's decision in *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 204-05, 536 N.E.2d 946.

We conclude that, in the present case, flight costs are education expenses as contemplated by the parties' marital settlement agreement. The Illinois courts, in *Holderrieth* and *In re Marriage of Oldham* (1991), 222 Ill. App. 3d 744, 750-52, 584 N.E.2d 385, have addressed the question of whether a school is a "college or university" or a "trade school" within the meaning of a marital settlement agreement as well as the obligations of each parent which result from a school's classification. In *Holderrieth*, the parties' marital settlement agreement provided that respondent would pay for the "college and professional education expenses of the children." (*Holderrieth*, 181 Ill. App. 3d at 200.) Subsequently, the parties' son began attending the "Denver Automotive and Diesel College" whose program did not include any courses in English, literature, social studies, math, or the fine arts and taught only automobile and diesel mechanics and lasted only 15 months; and upon completion of the program, students were awarded two-year associate's degrees. (*Holderrieth*, 181 Ill. App. 3d at 205.) Respondent, however, refused to pay the son's educational expenses. (See *Holderrieth*, 181 Ill. App. 3d at 200.) This court held that the "Denver Automotive and Diesel College" was not a "college or professional school" as prescribed by the parties' marital settlement agreement, but rather the school was a trade or vocational school. (See *Holderrieth*, 181 Ill. App. 3d at 204-05.) This court also concluded that, based on customary definitions as well as legal precedent (see *Atlantic Cleaners & Dyers, Inc. v. United States* (1932), 286 U.S. 427, 436, 76 L. Ed. 1204, 1209, 52 S. Ct. 607, 610; *Township of Princeton v. Institute for Advanced Study* (1960), 59 N.J. Super. 46, 53-54, 157 A.2d 136, 140), "a college refers to undergraduate study in the liberal arts or sciences leading, usually after four years, to a bachelor's degree." See *Holderrieth*, 181 Ill. App. 3d at 204.

In *Oldham*, the marital settlement agreement provided that if petitioner's husband was financially able, "he will pay all necessary and reasonable expense[s] incident to an education at the college or university level" for each of the children who was specified in the settlement agreement. (*Oldham*, 222 Ill. App. 3d at 746.) Subsequently, the parties' two children, both of whom were specified in the settlement agreement, decided to enroll at the DeVry Institute of Technology (DeVry) seeking a degree in business operations and management. (See *Oldham*, 222 Ill. App. 3d at 747.) Respondent, executor of petitioner's ex-husband's estate, refused to pay the children's educational expenses. (See *Oldham*, 222 Ill. App. 3d at 747.) On appeal to this court, respondent relied on *Holderrieth* and claimed that the trial court erred in determining that DeVry was a "college or university" as that term was used in petitioner's marital settlement agreement with decedent. (See *Oldham*, 222 Ill. App. 3d at 752.) This court distinguished *Holderrieth* and held that DeVry was a "college or university" as that term was used in the marital settlement agreement. See *Oldham*, 222 Ill. App. 3d at 752-53.

In the instant case, we find no merit to respondent's contention that because flight costs are paid for hourly and are separate and apart from tuition expenses, they are neither "education expenses" nor "fees" as those terms are used in the parties' marital settlement agreement. *Holderrieth* and *Oldham* establish the principle that, with respect to a marital settlement agreement that requires a parent to have the financial responsibility for a child's "college expenses," it is not the activity alone which the child decides to pursue which determines the parent's financial responsibility, but rather it is how that activity is incorporated into the greater learning process which determines the parent's responsibility.

In the present case, the record reveals that flight instruction, as well as the resulting "flight costs," was an integral part of the curriculum, for all majors, at the college of airway sciences at the University of North Dakota. The discipline requires that nonflight courses be paid by tuition and that additional fees in connection with "flight costs" would cover the flight instruction required as part of the curriculum. Thus, it is clear that even though David elected to pursue a degree in airway sciences at the University of North Dakota and incurred costs in connection with flight instruction required by that program, the program leads to a bachelor's degree and incorporates traditional liberal arts courses into its requirements. Accordingly, as in *Oldham*, we hold that the school at issue is a "college or university" as contemplated by the marital settlement agreement and respondent is required to pay for flight costs in connection with his child's education.

## II

Next, respondent contends that the trial court erred in not taking into account the other sources available to David in assessing respondent's responsibility for the flight costs. Respondent points out that it is undisputed that David could have reduced the tuition in the amount of 60% by applying for a residency discount and that the evidence demonstrates that the reason he did not apply was because petitioner and her attorney decided that David should not become a resident because of this lawsuit since as soon as David became a resident in North Dakota, petitioner believed that her claim for child support would be affected. Respondent argues that the trial court erred by not giving any credit to respondent's obligation to pay for his son's education as a consequence of the deliberate actions of petitioner which caused respondent to pay 60% more for tuition than he would have otherwise been obligated to pay.

In addition, respondent points out that: (1) David testified that he paid for his own summer school because he felt as if it was his own contribution; (2) David told defendant that he had approximately $10,000 put aside for school; and (3) there was a college fund available from petitioner. Respondent maintains that because the trial court's determination that respondent was obligated to pay $12,196.95 in child support for David's education erroneously failed to take these considerations into account, the judgment should be reversed.

We conclude that the trial court correctly determined that respondent was under a legal duty to provide for the maximum amount of his child's future education expenses in accordance with the marital settlement agreement. Section 513 of the Illinois Marriage and Dissolution of Marriage Act allows a court to make an award for the educational expenses of a child, minor or adult, out of the property and income of either or both parents as equity may require. (See 750 ILCS 5/513 (West 1992); *In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606, 617, 561 N.E.2d 394.) In making such awards, the court may consider (1) the financial resources of both parents; (2) the standard of living the child would have enjoyed had the marriage not been dissolved; (3) the financial resources of the child; and (4) all other relevant factors which are reasonably related to its decision before ordering a noncustodial parent to pay for a child's educational expenses. (See *Alltop*, 203 Ill. App. 3d at 617.) The purpose of this provision is to authorize a discretionary award of education expenses so as to guarantee that funds are available if the need arises. (See *Alltop*, 203 Ill. App. 3d at 617.) Because a provision for payment of college expenses is in the nature of child support, rather than property settlement, such provisions are modifiable. See *In re Marriage of Loffredi* (1992), 232 Ill. App. 3d 709, 713, 597 N.E.2d 907.

■ In the present case, the record reveals that David evinced an aptitude and desire to attend college and respondent agreed, under the terms of the marital settlement agreement, to pay for the expenses of such education. The trial court had available to it the yearly college expenses which David had paid in the past[1] and the assets and income of both respondent and petitioner as well as those of David. As such, the trial court could properly determine that respondent was able to pay for his child's college education, in accordance with the terms of the parties' marital settlement agreement. Therefore, we conclude that the trial court did not abuse its discretion in requiring respondent to pay up to $16,000 per year in connection with his child's college education expenses in accordance with the martial settlement agreement.

### III

Respondent's final contention on appeal is that the trial court, in its order of October 2, 1992, erred in holding him in contempt as well as for awarding petitioner attorney fees for his failure to pay flight costs where such a failure was not made in bad faith. Respondent maintains that because a *voluntary change* in employment which results in reduced financial ability can constitute a substantial change in circumstances justifying a reduction in child support obligation (see *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 330, 547 N.E.2d 749), certainly, as is the case here, the *involuntary loss* of employment constitutes a substantial change in circumstances justifying a reduction. Respondent also posits that since the failure to pay flight costs was not without cause or justification, the court erred in awarding petitioner's attorney fees.

Contrary to respondent's claim, we conclude that the trial court did not abuse its discretion in awarding petitioner attorney fees and in holding respondent in willful contempt. Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act provides, in pertinent part, as follows:

> "(b) In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party." (750 ILCS 5/508(b) (West 1992).)

The allowance of attorney fees in connection with divorce proceedings rests within the sound discretion of the trial court and that

---

[1] At the conclusion of the testimony in the instant case, David was already a junior in college.

discretion will not be interfered with unless it is clearly abused. (See *In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 720, 396 N.E.2d 659; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 814, 375 N.E.2d 961.) Where a party's failure to comply with an order or judgment is without cause or justification, an award of reasonable attorney fees and costs is mandatory. (See *In re Marriage of Irvine* (1991), 215 Ill. App. 3d 629, 635, 577 N.E.2d 462.) The trial court may exercise its discretion when deciding whether a delinquent parent's failure to pay support was "without cause or justification" and a finding of "willful" delinquency in making payments required by a trial court order is the equivalent of finding that the failure to comply is "without cause or justification." (See *In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 1081, 519 N.E.2d 1147.) Although it is necessary to determine whether any failure to pay support was "without cause or justification" for the purposes of awarding mandatory attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act, a finding of contempt, however, is not necessary, because such a finding is not always a finding that one's delinquency was without cause or justification. (See *In re Marriage of Roach* (1993), 245 Ill. App. 3d 742, 748, 615 N.E.2d 30.) The purpose of civil contempt is coercive in nature: to require compliance with some order previously entered by the court; and whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb a trial court's finding of contempt unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. See *Roach*, 245 Ill. App. 3d at 748.

■ Although respondent contends that the trial court erred in finding that he was in willful violation of his obligation to pay his child's education expenses because his employment was terminated and he could not afford to pay for those education expenses, the record reveals that, in addition to owning assets in excess of $200,000, respondent was paid a salary of $82,000 per year by his employer through November 1990 and that he did not pay all of the education expenses that his child incurred while attending the University of North Dakota at that time and those that he did pay, he claimed were paid by mistake. Thus, despite being both able and aware of his obligation to pay his child's present and future education expenses, respondent did not fulfill his obligation in accordance with the marital settlement agreement. As a result, we conclude that the trial court did not abuse its discretion in awarding petitioner attorney fees and holding respondent in contempt because it could properly find that respondent's failure to pay his child's education expenses in accordance with the marital settlement agreement was willful and thus without justification.

## IV

We now address petitioner's cross-appeal from the trial court's order of December 10, 1991. Petitioner contends that because the trial court's award of $12,196.95 fails to award the child's full college expenses, the judgment of the trial court should be reversed and this cause should be remanded with directions to enter judgment for the full amount of the education expenses incurred. Petitioner points out that the evidence was uncontradicted that David incurred unreimbursed educational expenses totalling $21,803.31.

■ While noting that the cross-appeal was filed on November 4, 1992, we conclude that the trial court properly exercised its discretion in this respect. As previously discussed, the trial court's discretionary award of educational expenses to an adult child is authorized by section 513 of the Illinois Marriage and Dissolution of Marriage Act. (See 750 ILCS 5/513 (West 1992); *Alltop*, 203 Ill. App. 3d at 617.) Pursuant to section 513, factors which the trial court may take into consideration in issuing an award of education expenses include: (1) the financial resources of both parties; (2) the standard of living that the child would have enjoyed had the marriage not been dissolved; (3) the financial resources of the child; and (4) other factors which are reasonably related to its decision before ordering a noncustodial parent to pay for a child's education expenses. (See 750 ILCS 5/513 (West 1992); *Alltop*, 203 Ill. App. 3d at 617.) The record reveals that, in determining respondent's obligation for his child's educational expenses through the fall of 1991, the trial court properly took these actions into consideration.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.