KAREN L. HUPE, n/k/a Karen Zanier, Petitioner-Appellant, v. W. DEAN HUPE, Respondent-Appellee.

Third District   No. 3—98—0647

Opinion filed May 26, 1999.

Adrienne W. Albrecht (argued), of Sacks, Albrecht, Copeland & Sacks, of Kankakee, for appellant.

Ernest L. Gowen (argued), of Ernest L. Gowen & Associates, of Oak Forest, for appellee.

JUSTICE KOEHLER delivered the opinion of the court:

The petitioner, Karen Hupe, appeals post-decree orders of the circuit court of Kankakee County in a dissolution of marriage action. The question on appeal is: Did the circuit court abuse its discretion when it: (1) extended reviewable maintenance payments but at a reduced level; (2) ordered the respondent to pay only the book costs, tuition and fees as educational expenses of the parties' daughter; and (3) ordered that each party is to pay their own attorney fees? Because we conclude that the circuit court did not abuse its discretion, we affirm.

## FACTS

The petitioner and the respondent, each age 53 at the time of the divorce, were married in 1959. They had five children together between 1960 and 1973. They separated in 1978 and the circuit court entered a judgment for dissolution of marriage in 1992. The respondent is part owner of the family sod farm business and, at the time of the judgment, had an annual income of $75,000. The petitioner did not work outside the home after 1961 and was not employed outside of the home at the time of the dissolution. Additionally, she claims to have incurred $91,000 in debt during the separation.

The couple's marital assets were divided as follows: The respondent received ownership of the couple's business interests which were valued at $455,320. The judgment gave the petitioner the marital home, including all of the furniture and appliances in the home, except for a piano. It also gave her ownership of a trust valued at $70,000. An expected $8,000 in payments on property the couple owned in Spokane, Washington, were to be made to the petitioner. All rents from property were to be evenly divided. The proceeds from redemption of the couple's stock in a finance company were likewise to be divided equally. The petitioner's property settlement at the time of the dissolution was valued at $178,000. In order to equalize the property interests, the circuit court entered a judgment order for $277,320 against the respondent in favor of the petitioner toward which the respondent was ordered to make an initial payment of $25,000. The petitioner used those funds to purchase another automobile and repay some loans. The petitioner's share of the proceeds from trusts that the couple owned and which were ordered sold was to be applied against the judgment amount. The parties stipulated that attorney and other fees incurred in the sale of the properties would be paid from a separate trust. Any balance left was to be applied against the judgment entered against the respondent. Under the judgment, the respondent had sole responsibility of repaying a $26,000 debt owed to his father, and each party was responsible for his or her own post-separation personal debt. Pursuant to the judgment for dissolution, the respondent was ordered to pay $2,500 per month to the petitioner as maintenance. The circuit court ordered that the payments be made in two lump sums of $15,000 each for four years. Maintenance was reviewable at the end of the four years or prior to that in the event of a change of circumstance for either party.

The petitioner currently lives in the marital home. She reported income since the dissolution in the following amounts: $30,566 in 1992, the year the marriage was dissolved; $33,000 in 1993; $82,859 in 1994, including $42,001 in capital gains on property she had sold; and $40,547 in 1995. In December 1995, she gained full-time employment at Harbor House as coordinator for abuser educational domestic violence services where she earns approximately $18,720 gross. She testified that since 1992 she has repaid debt of $120,000, $91,000 of which was owing at the time of the dissolution. However, a $6,000 home equity loan, $12,000 in accountant fees, and $14,000 in attorney fees from post-dissolution proceedings remained. The petitioner also testified that she has some cardiovascular problems and a congenital sciatic nerve problem that worsens with age; however, she does not see a doctor for either of these conditions.

The petitioner pays $1,000 monthly rent for a condominium in Flossmoor. His average gross income has ranged between $90,000 and $95,000. He testified that, in addition to his rent, he spent approximately $24,000 on living expenses. A $78,000 balance on the judgment he is to pay to the petitioner remained.

The parties' youngest child, Amber, was a student at Kankakee Community College when the dissolution was entered. The circuit court ordered the respondent to pay Amber's food and shelter while she attended college, and ordered the respondent to pay tuition, book costs and fees. Neither party was required to supply a vehicle for Amber while she attended college. The circuit court reserved the issue of post-Kankakee Community College education expenses. The parties' daughter, Amber, completed the final two years of her college education at Elmhurst College, where tuition and fees totaled $23,090. The respondent contributed $10,000 during those two years, giving Amber $2,500 each semester. Initially, Amber lived with her mother but later moved into her own apartment. The petitioner paid Amber's room and board, which totaled $14,180 during her Elmhurst College years. Amber received a $5,000 gift from her paternal grandparents, which she used to purchase an automobile to commute to and from school. Amber turned down her father's offer of employment at the family business along with the use of an automobile because, as she testified, of the divorce proceedings. Amber instead worked part-time at several other jobs. Amber testified that she contributed $17,000 to her Elmhurst College tuition, book costs and fees with student loans and the income from her part-time employment. She also received a $24,600 loan from her maternal grandmother which she used to pay for her college expenses.

In April 1996, the respondent filed a petition to modify award of maintenance seeking termination of maintenance. The petitioner filed a response and, shortly after, also filed her own petition to modify seeking extension of maintenance beyond the original four years as well as a petition for payment of educational fees. The petitioner did not request attorney fees in either petition and did not file a petition for attorney fees. At the time of the hearings on the petitions, all of the trusts had not yet been sold, but the petitioner had received $3,750 from the sale of the Spokane property. The circuit court entered the following orders: (1) The respondent is to continue paying the petitioner maintenance for three more years but reduced the payments from $2,500 per month to $1,200 per month, reviewable in three years or in the event of a change in circumstance; (2) the respondent is credited the $10,000 in education expenses he has already paid to Amber but must pay the balance of $13,090 for tuition, books

and fees at Elmhurst College; on the petitioner's motion to reconsider, the court disallowed $3,460 which it had initially included as one-third of Amber's transportation cost and which was based on the purchase price of Amber's automobile; and (3) each party is to pay his or her own attorney fees. In an order not under appeal, the circuit court ordered the respondent to pay $25,492.12 in interest on the portion of the judgment that had not been satisfied as of two years after the dissolution. The petitioner now appeals these three orders of the circuit court.

## ANALYSIS

■ The awards of maintenance, child support, and attorney fees are within the sound discretion of the circuit court and will not be reversed on appeal unless the awards constitute an abuse of discretion. *In re Marriage of Severino*, 298 Ill. App. 3d 224, 228, 698 N.E.2d 193, 196, citing *In re Marriage of Morse*, 240 Ill. App. 3d 296, 307, 607 N.E.2d 632 (1993) (award of maintenance); *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 190-91, 648 N.E.2d 304, 311-12 (1995) (award of educational expenses; award of attorney fees).

### 1. Maintenance

The petitioner argues that the circuit court abused its discretion when it entered an order for reviewable maintenance, reducing her monthly expenses and the amount of the monthly payments. She maintains that she "operates at a deficit," repaying loans she has incurred as a result of the separation and dissolution. She contends that she cannot live as she did during the marriage while the respondent lives a "lavish lifestyle." His living, travel and entertainment expenses are paid for by his family business, and he has the ability to make maintenance payments that would allow the petitioner to maintain the lifestyle she had during the marriage.

The respondent denies living a lavish lifestyle and, in turn, argues that the petitioner has been living improvidently beyond her means. He contends that he is not required to continue paying a higher maintenance amount simply because he can afford to do so. Rather, maintenance only is warranted to meet a party's reasonable needs. Moreover, the parties' debts at the time of the original judgment were before the circuit court at that time and should not have been considered on the issue of modification.

■ Under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/510(a) (West 1992)), the circuit court will modify the maintenance award only upon a showing of a substantial change in circumstances which the party seeking the modification has the burden of showing. *Thurston v. Thurston*, 260 Ill.

App. 3d 731, 733, 633 N.E.2d 118, 120 (1994). When considering whether to modify maintenance, the court should consider the same factors it did when it made its initial determination. *Thurston*, 260 Ill. App. 3d at 733, 633 N.E.2d at 120. These factors include:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support *** herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 1992).

After hearing testimony from the petitioner and the respondent on each of the petitions to modify, the circuit court concluded that there had been a substantial change in circumstances as defined in the Act because: (1) the respondent's annual income had increased substantially to over $90,000; (2) the petitioner had obtained full-time employment and was earning approximately $15,000 annually; and (3) there had been "substantial transfers of cash" resulting from the liquidation of properties that the court had ordered sold. Having concluded that there had been a substantial change in circumstances, the circuit court determined that: (1) there was still "a great disparity" between the income of the parties; (2) contrary to expectations, two years after the judgment was entered, less than half of the judgment had been satisfied and, therefore, a smaller than expected portion of the marital estate was transferred to the petitioner during that period; (3) the petitioner's monthly expenses exceeded her monthly

income and, although she has entered the job market, her employment income has been insufficient to meet her needs, noting that this was not the petitioner's fault considering her age and the market conditions when she began looking for full-time employment; (4) the petitioner is developing a publishing business and an herb business, but currently has no income from either, although she does have employment income in excess of $14,000 annually; (5) the respondent's income has increased substantially; (6) the standard of living the petitioner is seeking to maintain is consistent with that during the marriage; and (7) maintenance should not be terminated, but should not be continued at its original level. The circuit court further determined that the petitioner overstated her expenses by including the replacement cost of her car, for which she had paid cash. Finally, the court determined that her monthly income tax figure based on $30,000 maintenance per year and her home repair and maintenance costs were too high. The circuit court, consequently, ordered that maintenance be continued but at a reduced level.

■ At the time the judgment for dissolution was entered, the petitioner was unemployed and her maintenance award set her at an annual income of $30,000. On the petitions to modify, the circuit court refused to terminate maintenance and has instead seen to it that, at least for now, the petitioner's income will remain at the same level. The new award of maintenance totaling $14,400 per year, added to the petitioner's employment income, maintains her in her current financial condition. Moreover, the circuit court recognized that the petitioner does have access to liquidated marital assets and noted that the petitioner has the future potential to increase her income through her developing business interests. We conclude from the record that the circuit court's review was thorough when it considered the factors as mandated under the Act. We conclude that the circuit court did not abuse its discretion when it declined to terminate maintenance but extended it at a reduced level in light of each party's change of circumstances.

## 2. Educational Expenses

We next consider whether the circuit court abused its discretion when it ordered the respondent to pay only Amber's book costs, tuition and fees at Elmhurst College. The petitioner argues that the court abused its discretion in disallowing the transportation expense and in failing to order the respondent to pay a larger portion of the costs incurred by Amber while attending Elmhurst College. Simply put, she contends that the respondent should pay a larger share of the education expenses because of his greater income. The petitioner

maintains that she and Amber were forced to "struggle and borrow" in order to pay Amber's college expenses while she was in school. Moreover, to require the petitioner to pay such a large portion of Amber's expenses would inflict an unjust hardship on her. She contends that although the parties agreed in the judgment that neither party was obligated to purchase an automobile for Amber while she was in college, the agreement did not preclude the circuit court from ordering the respondent to contribute to transportation expenses, which it should have done.

The respondent answers that although the circuit court is authorized to order payment of education expenses, it is not mandated to do so. Furthermore, the original judgment specified that neither party was required to purchase an automobile for Amber and the circuit court was not required to rewrite the judgment. Additionally, the circuit court had the right to consider the respondent's lack of a relationship with his daughter, the maintenance payments he was making to the respondent at the time, and the cost of a state school versus a private school when deciding the extent of his obligation for Amber's educational expenses.

■ The circuit court may order the payment of educational expenses pursuant to the Act, which provides in pertinent part:

> "(a) The court may award sums of money out of the property and income of either or both parties ***, as equity may require, for the support of the child *** of the parties who have attained majority in the following instances:
> ***
>> (2) *** for the educational expenses of the child *** of the parties, whether of minor or majority age ***. *** The educational expenses may include, but shall not be limited to, room, board, dues, tuition, transportation, books, fees, *** and living expenses ***.
>
> (b) In making [the] awards ***, the court shall consider all relevant factors that appear reasonable and necessary, including:
>> (1) The financial resources of both parents.
>> (2) The standard of living the child would have enjoyed had the marriage not been dissolved.
>> (3) The financial resources of the child." 750 ILCS 5/513 (West 1992).

A provision for payment of college expenses is in the nature of child support and is modifiable. *Dieter*, 271 Ill. App. 3d at 190, 648 N.E.2d at 311. The Act does not mandate that divorced parents must pay for their children's post-high school education, and the language of the statute plainly indicates that the matter is at the discretion of the trial court. *In re Support of Pearson*, 111 Ill. 2d 545, 551, 490 N.E.2d 1274, 1277 (1986).

■ Noting that it is required to take into consideration all relevant factors that appear reasonable and necessary (750 ILCS 5/513(b) (West 1992)), the circuit court determined that: (1) Amber reasonably relied on her father's contribution for the last two years of her college education; (2) the testimony of both Amber and the petitioner reflected their reasonable belief that the circuit court would continue the judgment for dissolution under which the respondent would be responsible for tuition, books and fees; (3) it was reasonable, given that the circuit court had reserved the issue of payment of education expenses beyond her first two years at junior college, for the parties to expect the circuit court at some time to determine the contributions to be made by each party; and (4) Amber's choice of college was reasonable, her grades excellent and her reluctance to work for her father was understandable.

The circuit court's order enforces the judgment for dissolution that ordered the respondent to pay for books, tuition, and fees and the petitioner to pay room and board. It drew its conclusion from evidence it heard from all the parties and followed the circuit court's judgment for dissolution, which the parties had relied upon. We conclude that the circuit court's order does not constitute an abuse of discretion where the court followed the order relied upon by the parties and gave Amber the funds she needs to repay school loans and deliver her from the burden of substantial debt as a consequence of having pursued her college education.

### 3. Attorney Fees

■ We next ask whether the circuit court abused its discretion when it ordered each party to pay his or her own attorney fees. The petitioner contends that she is financially unable to do so and that she would be required to invade her assets in order to pay the fees. Conversely, the respondent's attorney fees are paid by his family business and, thus, he is well able to pay the petitioner's fees.

The respondent points out that neither the petition to modify the order nor the petition for educational expenses contained a prayer for attorney fees and the petitioner did not request such a hearing; therefore, it cannot be raised on appeal. Additionally, the petitioner presented no evidence that she is unable to pay the attorney fees.

The court may, after due notice and hearing and after considering the financial resources of the parties, order any party to pay a reasonable amount for his own costs or the other party's attorney fees in connection with the enforcement or modification of any order or judgment under the Act. 750 ILCS 5/508 (West 1992).

To justify the allowance of attorney fees, the party making the

request must show that she is financially unable to pay the fees herself and that her spouse is able to pay. *In re Marriage of Gable*, 205 Ill. App. 3d 696, 700, 563 N.E.2d 1215, 1217-18 (1990). If a party does not request a hearing on her ability to pay, the right to a hearing is waived and the court may base its decision on the financial conditions of the parties as evidenced in the record. *In re Marriage of Cierny*, 187 Ill. App. 3d 334, 347, 543 N.E.2d 201, 210 (1989).

The record indicates that the petitioner's response to the respondent's petition for modification of maintenance contains a prayer for an award of attorney fees. Additionally, the transcript of proceedings contains requests by the petitioner for a hearing on attorney fees. However, although the petitioner's response to the respondent's petition seeking termination of maintenance includes a request for attorney fees, she failed to request such in either of her own petitions. Moreover, she never filed a separate petition for attorney fees. In *In re Marriage of Thornton*, 138 Ill. App. 3d 906, 914, 486 N.E.2d 1288, 1293-94 (1985), the petitioner estimated that she owed approximately $175,000 in attorney fees, but counsel repeatedly failed to file a petition for attorney fees. Nevertheless, this court, considering the petitioner's large estimate of fees and lack of liquidated assets, concluded it was equitable and appropriate to remand to the circuit court to allow the petitioner an opportunity to file a petition and to allow the circuit court to conduct a hearing. *Thornton*, 138 Ill. App. 3d at 914-15, 486 N.E.2d at 1294. In *Pierce v. Pierce*, 69 Ill. App. 3d 42, 48, 386 N.E.2d 1175, 1179 (1979), this court refused to consider the petitioner's request for attorney fees because, although she had requested them in her prayer for relief, she had never filed a petition for fees. In the case before us, the petitioner testified that, among her debts, she owes $14,000. The record further reflects that the petitioner's assets have largely been liquidated and the circuit court has ordered interest payments on the portion of the judgment not satisfied within two years of the dissolution. As we have already discussed, the circuit court had before it extensive testimony regarding each party's financial circumstances. We conclude that the record contained ample evidence from which the circuit court could make its decision; therefore, the court did not abuse its discretion in ordering each party to pay his or her own attorney fees.

## CONCLUSION

In sum, we conclude that the circuit court did not abuse its discretion when it: (1) considered all Act factors and, in light of each party's change of circumstances, declined to terminate reviewable maintenance but extended it at a reduced level; (2) followed the judgment for

dissolution of marriage relied upon by the parties in ordering the parties to pay their daughter's educational expenses; and (3) examined the extensive testimony regarding the parties' financial circumstances in ordering each party to pay his or her own attorney fees.

Accordingly, we affirm.

Affirmed.

BRESLIN and HOMER, JJ., concur.